*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0141p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: STUART C. BRINLEY,

                    *Debtor.*

                                   Nos. 03-5607/5653

STUART C. BRINLEY,

          *Appellee/Cross-Appellant,*

      *v.*

LPP MORTGAGE, LTD.,

          *Appellant/Cross-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 02-00378—Charles R. Simpson III, District Judge.

Argued: August 6, 2004

Decided and Filed: March 22, 2005

Before: BATCHELDER and DAUGHTREY, Circuit Judges; DOWD, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Rick D. DeBlasis, LERNER, SAMPSON & ROTHFUSS, Cincinnati, Ohio, for Appellant. Richard A. Schwartz, KRUGER, SCHWARTZ & MORREAU, Louisville, Kentucky, for Appellee. **ON BRIEF:** Rick D. DeBlasis, LERNER, SAMPSON & ROTHFUSS, Cincinnati, Ohio, for Appellant. Richard A. Schwartz, KRUGER, SCHWARTZ & MORREAU, Louisville, Kentucky, for Appellee.

      DAUGHTREY, J., delivered the opinion of the court. DOWD, D. J. (p. 8), delivered a separate concurring opinion, in which BATCHELDER, J., joined.

---

[*] The Honorable David D. Dowd, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

MARTHA CRAIG DAUGHTREY, Circuit Judge.  In this appeal, we are asked to determine the extent to which a judgment lien impairs a debtor's statutory exemption.  Both the debtor, Stuart C. Brinley, and the creditor, LPP Mortgage, Ltd., dispute portions of the district court's ruling that reversed the bankruptcy court's ruling on the debtor's motion to avoid the judgment lien of the creditor.  Specifically, LPP contends that the district court erred in concluding that Brinley's statutorily-based exemption from bankruptcy estate property was impaired by LPP's entire judgment lien on Brinley's real estate.

Brinley, in turn, insists that the bankruptcy and district courts did not properly calculate the value of his interest in the real property in question in this litigation.  Although we conclude that the district court and the bankruptcy court correctly valued the debtor's interest in property he held as a tenant by the entirety, we further conclude that the district court incorrectly determined the extent to which LPP's lien impaired Brinley's statutory exemption.  We therefore affirm the district court judgment in part, reverse in part, and remand the case for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties to this appeal have stipulated to all relevant facts underlying the litigation.  Pursuant to the stipulation, they agree that Stuart Brinley and his non-debtor spouse own $280,000 worth of property jointly with rights of survivorship (that is, as tenants by the entirety).  The property is secured by a first mortgage held by PHH US Mortgage Corporation in the amount of $180,000.  The parties further agree that approximately three months after the Brinleys executed that initial mortgage, a judgment lien ultimately assigned to LPP in the amount of $112,418.35, plus interest, was also placed against the property.  Years later, the debtor and his wife executed a second mortgage on the same property with Bank One, Kentucky, N.A.  The amount presently due and owing on that junior lien is $80,345.09.

Unfortunately, Stuart Brinley was ultimately forced to seek protection under Chapter 7 of the United States Bankruptcy Code.  Then, without complaint from LPP, Brinley claimed entitlement to a statutory exemption in the amount of $6,000.  Because the mortgages and judgment lien on Brinley's primary asset far exceeded the value of that land, however, the debtor's right to his claimed exemption was seriously impaired.

To preserve the $6,000 exemption, the bankruptcy court and the district court took different analytical paths when this case was before them.  The bankruptcy court examined relevant statutory provisions and concluded that the most junior lien on the Brinleys' property, the second residential mortgage in the amount of $80,345.09, should first be avoided in its entirety before LPP's judgment lien was partially avoided to reduce Brinley's indebtedness sufficiently to give effect to the exemption.  On appeal from that determination, the district court, interpreting the same statutory provisions, ruled that LPP's judgment lien, even though senior in priority to Bank One's second mortgage on the real property, should first be avoided in its entirety in order to allow the debtor to take advantage of the claimed exemption.

LPP now appeals from that district court judgment.  Although the creditor does not contest the debtor's right to avoid some of the judgment lien attached to the Brinleys' property, LPP advocates adoption of the *bankruptcy court's* analysis that would minimize the amount of the judgment lien that would be avoided.

Despite reaping the benefit of avoiding the LPP judgment lien in full, Brinley also appeals from the district court ruling, claiming that the court erred in considering the entire $280,000 value of his property when calculating the amount of the lien avoidance. He contends that, because he owned the property as a tenant by the entirety with his non-debtor wife, the court should have valued his share of the subject property at only $140,000.

## *DISCUSSION*

We review a district court's conclusions of law in a bankruptcy appeal de novo. *See Holland v. Star Bank, N.A. (In re Holland)*, 151 F.3d 547, 548 (6th Cir. 1998). The bankruptcy court's initial factual findings, however, are reviewed by both the district court and by this court only for clear error. *See id.*

### I.  Statutory Framework for Avoidance of Judicial Liens

One of the purposes of federal bankruptcy law is to accord to the debtor a "fresh start" from past financial difficulties. *See id.* at 550 (citing *In re Miller*, 198 B.R. 500, 505 (Bankr. N.D. Ohio 1996)). To that end, 11 U.S.C. § 522(f)(1), in relevant part, provides:

> [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property *to the extent that such lien impairs an exemption to which the debtor would have been entitled . . . if such lien is –*
>
> > *(A) a judicial lien . . .* or
> >
> > (B) a nonpossessory, nonpurchase-money security interest in any
> >
> > > (i) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
> > >
> > > (ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
> > >
> > > (iii) professionally prescribed health aids for the debtor or a dependent of the debtor.

(Emphasis added.)

To aid in the determination of "the extent that such lien impairs an exemption," Congress amended the Bankruptcy Code in 1994 to add subsection (2)(A) to § 522(f) of title 11. That "new" subsection states:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of
>
> > (i) the lien;
> >
> > (ii) all other liens on the property; and

>           (iii) the amount of the exemption that the debtor could claim if there
>           were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence
> of any liens.

No one disputes that these provisions of 11 U.S.C. § 522(f) accurately describe the calculations to be undertaken to determine what portion of a judicial lien may or must be avoided in order to give effect to a debtor's exemption. Although the courts and the parties concur in the actual decisional framework to be utilized, they would arrive at different results based upon the application of the framework to the facts of this case.

## A.  Bankruptcy Court Version

In applying the seemingly straight-forward provisions of 11 U.S.C. § 522(f) to this case, the bankruptcy court concluded that only $18,418.35 of LPP's judgment lien would be avoided by giving effect to the debtor's exemption, "leaving LPP with a judgment lien of $94,000 on the Property."  To obtain those figures, the bankruptcy court did not aggregate the values of LPP's judicial lien ($112,418.35), the first mortgage on the property ($180,000.00), the second mortgage on the property ($80,345.09), and the debtor's claimed exemption ($6,000.00), as required by the statute.  Instead, in arriving at the figure by which the liens and the exemption exceeded the value of the property without liens ($280,000.00), the bankruptcy court ignored the second mortgage on the property that was junior to LPP's judgment lien.  By doing so, the court immediately reduced the impairment of the exemption by the $80,345.09 value of the second mortgage and left a difference between (a) the sum of the remaining liens and exemption amount ($298,418.35) and (b) the value of the property without liens ($280,000.00) of $18,418.35, the amount by which LPP's judgment lien must be avoided.  Subtracting that amount from the total $112,418.35 value of the judgment lien, the bankruptcy court concluded that the creditor was still left with a $94,000 judgment lien on the property.

In reaching the result it did, the bankruptcy court openly admitted that it failed to follow the explicit language of the bankruptcy statute.  The court felt compelled to interpret the law as it did, however, because adherence to the strict provisions of the code would produce an "unjust result . . . without regard to state law priorities [of liens]."  Not surprisingly, LPP endorses the bankruptcy court's analysis of the statute and its operation because initial application of the junior lien value to the amount by which the debtor's exemption is impaired reduces LPP's "loss" by an equal amount.

## B.  District Court Version

Unlike the bankruptcy court, the district court felt obligated to adhere to the formulaic calculations called for in the statute.  By so adhering and including all liens and the debtor's exemption in the first totaling, the district court arrived at a figure of $378,763.44 ($180,000.00 + 112,418.35 + 80,345.09 + 6,000.00 = $378,763.44).  Because that sum exceeded the $280,000.00 value of the debtor's property, the district judge also concluded that the value of Brinley's statutory exemption was impaired.  Rather than specify that the exemption was impaired only to the extent that the sum *exceeded* the property value ($378.763.44 - 280,000.00 = $98,763.44), and offset the judicial lien only by that amount, however, the court simply concluded that "[t]he judicial lien of LPP in the amount of $112,418.35 will be avoided in its entirety."

## C.  Brinley's Version

The debtor agrees with the district court conclusion that the judicial lien may be avoided in its entirety in the effort to give effect to the debtor's statutory exemption.  In so arguing, Brinley nevertheless adds a new wrinkle to the analysis by contending that the value of his property should

be calculated at only one-half of the $280,000.00 figure used by the courts, because he owns the land with his wife and, therefore, does not individually have access to the full value of the property. By using the $140,000.00 figure that Brinley believes is appropriate, he arrives at the same ultimate result as did the district court (complete avoidance of the judicial lien) because the difference between the sum of the lien amounts, together with the exemption amount, and the value of the property ($378,763.44 - 140,000.00 = $238,763.44) far exceeds the $112,418.35 value of LPP's judicial lien.

## II. Value of Property Owned by Brinley

The value to be given the property owned by the debtor thus becomes a threshold issue to be resolved in this appeal. As previously noted, both the bankruptcy court and the district court assumed that Brinley's property was valued at $280,000.00 and that the debtor, as a tenant by the entirety, was charged with that entire value. Brinley insists, however, that he holds the property only as a joint tenant with a right of survivorship and, therefore, that he personally owns only one-half of that realty.

Under Kentucky law, a joint tenancy, by definition, "is an estate held by two or more people who . . . are *not* husband and wife." *Sanderson v. Saxon*, 834 S.W.2d 676, 678 (Ky. 1992) (emphasis added). A tenancy by the entirety, on the other hand, "is an estate in land shared by husband and wife, whereby at the death of either the survivor is entitled to full fee simple ownership." *Id.* "[T]he survivor takes the entire estate at the death of the deceased co-tenant *not* by virtue of that death, but because, in law, each was viewed to own the *entire* estate from the time of its creation." *Id.* (emphasis in original). Because Brinley and his wife shared the property in question as spouses, their interests in the realty were as tenants by the entirety. Consequently, Brinley and his wife each owned the *entire* estate and the debtor was properly charged with the full $280,000.00 value of that property.

## III. Determination of Extent to Which Judicial Lien Impaired Exemption

The more difficult issue in this appeal requires us to choose between faithfulness to the explicit language of a controlling statute, with the resulting upset of the state law of lien priorities, and adherence to established lien priorities in the face of an evident Congressional intent to modify such treatment of creditors. As the learned Judge Richard Stair of the United States Bankruptcy Court for the Eastern District of Tennessee has recognized, this court has already "expressly stated that § 522(f)(2)(A) is a 'federal definition of impairment . . . and, in light of [its] explicit language, we no longer look to state law to define impairment.'" *In re Northern*, 294 B.R. 821, 830-31 (Bankr. E.D. Tenn. 2003) (quoting *Holland*, 151 F.3d at 550). Indeed:

> [T]he plain language of the statute provides for inclusion of all liens . . . . There is nothing in § 522(f)(2) that authorizes the court to pick and choose which liens to include in the impairment analysis, depending upon any state law priority scheme. To the contrary, § 522(f)(2) expressly instructs the court to include any and all liens in making any impairment analysis. Accordingly, the court is unable to deviate from this express instruction by Congress.

*Id.* at 831.

But even adopting the viewpoint espoused in *In re Northern* does not require us to affirm the decision of the district court in this matter. After adding together the values of all liens on the debtor's property and the value of the exemption sought in bankruptcy, and then subtracting the agreed-upon value of the Brinley's land ($378,763.44 - 280,000.00 = $98,763.44), the district court held in conclusory fashion that "[t]he judicial lien of LPP in the amount of $112,418.35 will be avoided in its entirety." The language of the relevant statute, however, authorizes avoidance of

judicial liens only *to the extent that* those liens impair an exemption.  An exemption is impaired, moreover, "*to the extent that* the sum of [the liens and the exemption] exceeds the value the debtor's interest in the property" absent the liens.  11 U.S.C. § 522(f)(2)(A).  Because the amount of the impairment in this case is $98,763.44, LPP's lien may be avoided only by that amount, thus allowing Brinley to take advantage of the statutory exemption afforded him.  Consequently, LPP retains a lien on the debtor's property in the amount of $13,654.91 ($112,418.35 - 98,763.44 = $13,654.91).  *See In re Northern*, 294 B.R. at 830.

LPP insists, however, that anything less than complete adoption of the analysis of the *bankruptcy court* decision in this matter will not only impinge upon the state law of lien priorities but will unjustly penalize senior lienholders and provide windfalls for debtors and junior lienholders. The United States Court of Appeals for the Eighth Circuit recently addressed these same arguments in a case with facts remarkably similar to those presented in this appeal.  In *Kolich v. Antioch Laurel Veterinary Hospital (In re Kolich)*, 328 F.3d 406, 410 (8th Cir. 2003), our sister circuit, after applying the express language of 11 U.S.C. § 522(f)(2)(A), stated:

> [W]e find no sufficient basis for concluding that the statutory formula produces, in this situation, a result "demonstrably at odds with the intentions of the drafters."  To be sure, the Bankruptcy Code usually looks to state law to define the property rights and priorities of creditors, including secured creditors.  But § 522(f) is an exception to that policy.  It was enacted to permit the avoidance of judicial liens that can interfere with the debtor's post-petition fresh start.  This selective avoidance gives an advantage under federal law to secured creditors holding consensual liens, typically, residential mortgage lenders.  But Congress intended to treat consensual lienholders more favorably, because their contractual relationships with the bankruptcy debtor typically allow the debtor to acquire equity in the exempt property by making post-petition mortgage payments.  The 1994 amendment creating the statutory formula here at issue was expressly aimed at overruling prior judicial decisions compromising that intent.
>
> We are not entirely comfortable with the equities of literally applying the statutory formula in this situation.  It may give a debtor contemplating bankruptcy the ability to wipe out judicial liens by persuading a lender to take an otherwise junior consensual lien that renders the exempt property over-encumbered and therefore ripe for impairment.  One would expect lenders to refuse to make such high-risk loans, but there may be times when self-interest or hard-to-detect collusion will lead to an abuse of § 522(f).  On the other hand, refusing to apply the statutory formula as written may result in denying deserving debtors the fresh-start advantage § 522(f) was enacted to provide – for example, if a drop in market value has left exempt property over-encumbered by a judicial lien and a junior consensual lien, and the judicial lienholder insists upon foreclosure.  With the competing equities both hard to weigh and finely balanced, our task is simply to apply § 522(f)(2)(A) as Congress wrote it.

(Citations omitted.)

In a final challenge to the application of the express language of 11 U.S.C. § 522(f) to the situation presented in this litigation, LPP quotes from the reversed bankruptcy court decision and argues that the "position espoused by the Debtor ignores the U.S. Constitution, specifically, the Fifth Amendment takings clause by eliminating existing property rights."  The Takings Clause of the Fifth Amendment provides simply, "[N]or shall private property be taken for public use, without just compensation."  The Supreme Court has, however, "been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be

compensated by the government, rather than remain disproportionately concentrated on a few persons." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).  Instead, engaging in ad hoc determinations, the Court has examined numerous factors of significance, including "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations . . . ." *Id.*

In this matter, although the application of the bankruptcy statutes does indeed have a significant economic impact on the business of LPP, the creditor cannot legitimately claim that such legislation unfairly interfered with any financial expectations.  Because LPP's lien was not registered until *after* the enactment of the amendments to the Bankruptcy Code that became § 522(f)(2)(A), the creditor was on notice concerning the operation of this debtor protection provision and its potential application to LPP's business activities.

## *CONCLUSION*

For the reasons set out above, we conclude that both the bankruptcy court and the district court failed to apply the relevant provisions of the Bankruptcy Code correctly in this dispute. Although the district court properly determined the value of the debtor's property interest and attempted to abide by the provisions of 11 U.S.C. § 522(f)(2)(A), that court erred in ruling that the judicial lien at issue should be avoided in its entirety. We conclude, instead,  that LPP should retain a judgment lien on the debtor's property in the amount of $13,654.91, the difference between the value of the original lien and the amount by which the debtor's exemption was impaired pursuant to applicable statutory provisions. We therefore AFFIRM the judgment of the district court in part, REVERSE in part, and REMAND this case for further proceedings as necessary.

---

**CONCURRENCE**

---

DAVID D. DOWD, JR., District Judge, concurring.  I agree with the well written opinion of Judge Daughtrey because I am of the view that her analysis is consistent with the precedent that has developed since Congress adopted 11 U.S.C. § 522(f)(1).  However, the notion that a subsequent mortgage lien, under the bankruptcy law, preempts an earlier filed judgment lien turns the whole concept of creditors' rights on its head.  The potential for fraud is obvious.

As long as the statute remains in effect, the judgment creditor must promptly initiate foreclosure proceedings to avoid the real probability that a subsequently filed mortgage lien will trump the judgment lien.  That Congress intended this result, in the context of a "fresh start," I find difficult to comprehend, but I cannot deny that it is within Congress's express Article I, Sec. 8 authority to regulate interstate commerce and "[t]o establish . . . uniform Laws on the subject of Bankruptcies[.]"  As it has already been decided that the statute does not constitute a taking in violation of the Fifth Amendment, I reluctantly concur.

I am authorized to say that Judge Batchelder joins me in this opinion.