**In re Jack A. BOWSHIER, Debtor.**

**No. 04–30910.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

May 30, 2008.

544

David M. Martin, Springfield, OH, Linda L. Bowshier, Urbana, OH, for Debtor.

## DECISION DENYING MOTION OF NISSAN MOTOR ACCEPTANCE CORPORATION FOR SUMMARY JUDGMENT WITH RESPECT TO DEBTOR'S MOTION TO AVOID JUDICIAL LIEN ON REAL ESTATE

LAWRENCE S. WALTER, Bankruptcy Judge.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This is a core proceeding by virtue of 28 U.S.C. § 157(b)(2)(H), (K), and (O).

This matter is before the court on the motion for summary judgment ("Motion") filed by Nissan Motor Acceptance Corporation ("Nissan") (doc. 100), the memorandum contra filed by Debtor Jack Bowshier ("Debtor") (doc. 104), and the reply of Nissan (doc. 105). Nissan's Motion seeks summary judgment with respect to Debtor's *Motion to Avoid Judicial Lien on Real Estate* (doc. 87). Essentially, Nissan argues that Debtor cannot prevail as a matter of law in his attempt to avoid Nissan's judgment lien under 11 U.S.C. § 522(f), a lien that allegedly impairs an exemption to which Debtor would have been entitled.

### FACTUAL BACKGROUND

Debtor and his wife (who is a debtor in her own chapter 7 case) own their residence at 1270 S. Ludlow Road, Urbana, Ohio as joint tenants with rights of survivorship ("Property"). According to an appraisal dated June 29, 1999 and according to Debtor's own assessment, the Property has a value of $375,000.00.[1] The Property is subject to liens aggregating approximately $3,483,239.87 at the time of the bankruptcy filing. These liens are itemized below in accordance with their presumed priority under state law:

| | |
|---|---|
| "First Mortgage" to Home City Federal Savings Bank | $ 290,000.00 |
| "Second Mortgage" to Home City Federal Savings Bank | $ 55,000.00 |
| "Third Mortgage" to Home City Federal Savings Bank | $ 141,000.00 |
| Nissan Motor Acceptance Corporation judgment lien | $ 597,239.87 |
| "Fourth Mortgage" to Dean V. Kruse & Kristen Kruse | $ 400,000.00 |
| "Fifth Mortgage" to Dean V. Kruse | $2,000,000.00 |

Debtor refers to the Third Mortgage to Home City as a "blanket" mortgage because the underlying debt is also secured by other unspecified collateral including other real estate.

The Fourth and Fifth Mortgages (jointly referred to as the "Kruse Mortgages") were granted by Debtor as part of a financial transaction by which he intended to make a business opportunity available to his son and nephew. The business was a retail motorcycle dealership where the son and nephew would be employed and have an opportunity to acquire ownership by means of a gradual "buy-in." Because Debtor was financially distressed at the time, he persuaded Dean Kruse, his prosperous friend of more than thirty years, to acquire the business and enter into a master agreement, including the buy-in arrangement, for the benefit of Debtor's two

---

1. Nissan has not seriously challenged this valuation and has offered no alternative appraisal.

relatives. However, Mr. Kruse agreed to the transaction only on the condition that Debtor would 1) execute the two Kruse Mortgages; 2) guaranty the obligations of Debtor's son and nephew; and 3) pledge substantially all of his personal property to Mr. Kruse to further secure the attendant obligations.

At the time Debtor was negotiating his transaction with Mr. Kruse, Nissan's lawsuit against Debtor was pending in state court. Nissan's resulting judgment lien against Debtor was recorded on July 26, 2002, approximately four months before the first of the two Kruse Mortgages was recorded.

### SUMMARY JUDGMENT STANDARD

The standard for addressing Nissan's Motion for Summary Judgment is contained in Fed.R.Civ.P. 56(c) and incorporated in bankruptcy adversary proceedings by reference in Fed. R. Bankr.P. 7056. The rule states in part that a court must grant summary judgment to the moving party if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the burden is on the nonmoving party at trial, the movant must: 1) submit affirmative evidence that negates an essential element of the nonmoving party's claim; or 2) demonstrate to the court that the nonmoving party's evidence is insufficient to establish an essen-

tial element of the nonmoving party's claim. *Id.* at 331–32, 106 S.Ct. 2548.

Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 586–88, 106 S.Ct. 1348.

Summary judgment is proper when the nonmoving party has had adequate time for discovery and yet "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### LEGAL ANALYSIS

Debtor seeks to avoid Nissan's judicial lien pursuant to 11 U.S.C. § 522(f). In relevant part, that section states as follows:

> (f) (1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);
>
> \* \* \*
>
> (2) (A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

11 U.S.C. § 522(f).

It is not disputed that Nissan's judgment lien is of the sort that is potentially avoidable under the language of the statute or that Debtor, under Ohio law, would be entitled to a $5,000.00 exemption in his Property if there were available equity. For purposes of summary judgment, the court must accept as true the debt balances attributable to each mortgage and the $375,000.00 property valuation espoused by the nonmoving Debtor. Not only is Debtor entitled to favorable inferences from the facts, but in this instance there are no alternative numbers championed by Nissan. To the extent Nissan alleges a potentially determinative numerical dispute, it has effectively defeated its own motion by raising a genuine issue of material fact.

■ Given the existence and nature of the liens, the known debt balances, and the established value of the Property, Debtor has easily set forth a *prima facie* case for avoidance of Nissan's judicial lien under 11 U.S.C. § 522(f). Under the clear language of the statute, once these basic facts are clear, impairment is determined in accordance with the simple mathematical formula outlined in § 522(f)(2)(A). In the Sixth Circuit, the statutory language has been construed very literally such that the amounts of all liens are totaled and setoff against the value of the real estate without regard to the relative priority of the liens under state law. *In re Brinley*, 403 F.3d 415, 421 (6th Cir.2005). In other words, the fact that the Kruse Mortgages are junior in priority to Nissan's lien is of no consequence when applying the statutory formula. In this case, the formula first requires adding together the amounts of all liens on the property plus the exemption amount as follows: $597,239.87 (Nissan lien) + $2,886,000.00 (all other liens) + $5,000.00 (exemption) = $3,488,239.87 ("Total Encumbrance"). Then, the extent of impairment is determined by subtracting the value of the Property from the previously calculated Total Encumbrance as follows: $3,488,239.87 (Total Encumbrance)—$375,000.00 (Property value) = $3,113,239.87 (extent of impairment). Debtor's exemption is completely and overwhelmingly impaired under this formula.

### Nissan's fraudulent transfer and marshalling arguments

■ However, Nissan argues that it would not be appropriate or equitable to include in the formula the two Kruse Mortgages and the Third Mortgage to Home City Federal. According to Nissan, the Kruse Mortgages should be eliminated entirely because they constitute fraudulent transfers. With respect to the Third Mortgage, Nissan maintains that the corresponding $141,000.00 debt should be subject to marshalling and only included in the formula to the extent that Home City Federal cannot be paid from its other collateral securing the same debt.

Although Nissan makes a reasonable case for regarding the Kruse Mortgages as fraudulent transfers, it is questionable whether it can establish all the elements

under 11 U.S.C. § 548 without running up against a genuine issue of material fact.[2] However, it is unnecessary for the court to decide the merits of the fraudulent transfer claims because no avoidance action has been timely filed in this case and Nissan cannot wield such a claim in the abstract and defensive manner it proposes.

This bankruptcy case has been pending for more than four years and the statute of limitations for avoidance actions expired pursuant to 11 U.S.C. § 546(a) more than two years ago. The trustee assigned to the case did not take any action to avoid the Kruse Mortgages, probably because there was no equity in the Property to benefit the estate even if the Kruse Mortgages had been avoided. Nevertheless, Nissan argues that as a creditor it has a right to assert a fraudulent transfer claim defensively, despite the statute of limitations.

Nissan cites three cases in support of its right to interpose a fraudulent transfer action defensively to Debtor's § 522(f) motion. The first of those cases, *Consove v. Cohen (In re Roco Corporation)*, 701 F.2d 978 (1st Cir.1983), is easily distinguishable and lends no support to Nissan's position. In *Roco*, a creditor filed a complaint to which the trustee filed an answer including an affirmative defense of fraudulent transfer and a counterclaim seeking preference avoidance, ultimately obtaining judgment against the creditor on both theories. The trustee clearly had standing to raise these defenses, the statute of limitations had not expired, and the court of appeals did not

address any procedural issues. Obviously, the instant case is quite different in that Nissan is not a trustee, the statute of limitations has expired, no adversary proceeding has been filed, and all necessary parties are not before the court.

The other two cases cited by Nissan, *Logan v. Credit General Insurance Company (In re PRS Insurance Group, Inc.)*, 331 B.R. 580 (Bankr.D.Del.2005) and *Matter of Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr.S.D.N.Y.1986), do address and condone defensive use of avoidance actions, but are nevertheless distinguishable. Both of these cases involve trustees asserting avoidance actions defensively for purposes of disallowing proofs of claim pursuant to 11 U.S.C. § 502(d).[3] The language of that statutory section is critical to the decisions in both cases. Arguably, § 502(d) allows a trustee to raise avoidance actions defensively for claim disallowance purposes even where such actions would otherwise be time-barred. Even so, the body of caselaw interpreting the statute is not unanimous in this view. *See, e.g., In re Marketing Associates of America, Inc.*, 122 B.R. 367, 369 (Bankr. E.D.Mo.1991) (trustee must timely bring preference action in order to invoke § 502(d)); *In re Southern Air Transport, Inc.*, 294 B.R. 293 (Bankr.S.D.Ohio 2003) (preference action must be fully adjudicated before § 502(d) may be used to disallow a claim).

■ In the instant case, of course, § 502(d) is not applicable and there is no

---

**2.** Determinations of "reasonably equivalent value" and a debtor's insolvency at the time of a transfer can be difficult to establish on summary judgment because they are particularly fact sensitive.

**3.** Title 11 U.S.C. § 502(d) provides as follows: "Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recovera-

ble under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title."

other statutory basis justifying Nissan's defensive and untimely use of a hypothetical avoidance action. In addition, the cases cited by Nissan all pertain to a trustee who has standing to bring avoidance actions on behalf of the estate. Parties without standing or derivative standing cannot assert avoidance claims affirmatively or defensively. Creditors, such as Nissan, only have derivative standing to assert avoidance claims in bankruptcy proceedings where a trustee "unjustifiably fails to pursue the claim." *In re Ontos, Inc.*, 478 F.3d 427, 431 (1st Cir.2007); *Canadian Pacific Forest Products Limited v. J.D. Irving, Limited (In re The Gibson Group, Inc.)*, 66 F.3d 1436, 1446 (6th Cir. 1995) (outlining the limited conditions, equivalent to a trustee's abuse of discretion, that might allow a creditor to achieve derivative standing to initiate an avoidance action). No basis for derivative standing is alleged or apparent in this case.

Finally, Nissan's argument for defensive avoidance of the Kruse Mortgages is at odds with the statutory language of § 522(f), particularly as it has been construed by the Sixth Circuit Court of Appeals. In *Brinley*, the Court of Appeals chose to remain faithful to the explicit language of § 522(f), even to the extent of ignoring fundamental state law pertaining to the priority of liens, the same law of priorities that permeates bankruptcy law and practice. *Brinley*, 403 F.3d at 421. This highly restrictive literal reading of the statute strongly suggests that existing liens should be accepted at face value without recourse to state law, other federal statutes, or equitable doctrines. This con-

clusion is further buttressed by § 522(f)(2)(B) which specifically excludes from the avoidance calculation any liens that have actually been avoided, with the logical inference that unavoided liens must be included until they are actually, and not hypothetically or equitably, avoided.

■ Not only does Nissan's proposed hypothetical defensive lien avoidance not comport with the language of the statute, but neither does its requested marshalling of the Third Mortgage of Home City Federal. In view of the plain language of § 522(f) and the definitive approach of the Sixth Circuit in *Brinley*, this court is disinclined to invoke equitable marshalling to change the result.[4] *See In re TNT Farms*, 226 B.R. 436, 446 (Bankr.D.Idaho 1998) ("[T]he court is disinclined to intervene on an equitable basis where there is a comprehensive statutory system in place dictating priority of the parties' interests.").

■ Nissan cites to *In re Kerbs*, 207 B.R. 211, 215–16 (Bankr.D.Mont.1997) in support of its marshalling argument. The *Kerbs* court, although acknowledging that the doctrine of marshalling as codified in Montana could not be applied directly to a lien avoidance dispute, nevertheless decided that the "equitable principle" of marshalling could be applied. While that court did not articulate an explicit rationale or authority for its decision, it presumably recognized the unfairness of allowing a creditor's lien to be avoided where another lien creditor's debt could be satisfied from other collateral. This court likewise recognizes that unfairness but believes it is inappropriate to resort to equity

---

4. Even if the court agreed with Nissan that equitable marshalling could be used in this context, Nissan could not prevail on summary judgment because there is no evidence before the court as to the value to be attributed to any other collateral securing Home City Fed-

eral's $141,000.00 debt. As such, issues of material fact remain unresolved and it is quite possible that Debtor could ultimately prevail by showing that marshalling would not prevent complete avoidance of Nissan's lien.

in the face of clear statutory language. As already discussed, the statute has been interpreted narrowly and literally by the Sixth Circuit notwithstanding the unfairness of ignoring lien priorities. Furthermore, when § 522(f)(2) was amended in 1994 it was intended to provide a "simple arithmetic test" and definition of impairment so as to eliminate the uncertainty and conflicting decisions created by the lack of a definition in the prior version of the law. H.R.Rep. No. 103–834, 103rd Cong., 2nd Sess. 41–42 (1994); 140 Cong. Rec. H10770 (Oct. 4, 1994). It would run counter to the intent of Congress for this court to inject the uncertainty of equitable principles and abstract theories into a clearly worded statute designed for formulaic precision.

An overview of these substantive and procedural defects makes the precarious nature of Nissan's position apparent. Nissan has no standing to assert a fraudulent transfer claim; the statute of limitations has already run on such claims; defensive use of avoidance claims (other than as counterclaims or affirmative defenses in adversary proceedings) is allowed only in the narrow context of claims objections pursuant to a statute subject to differing interpretations; the party whose mortgages would be theoretically avoided if an action could be commenced (Mr. Kruse) is not a party to this proceeding; and Nissan's hypothetical avoidance or modification of mortgages is at odds with the plain language of § 522(f), particularly as it has been literally and restrictively construed in this circuit. As a matter of law, Nissan simply cannot prevail on its fraudulent transfer and marshalling theories on summary judgment or otherwise.

### Nissan's laches argument

■ Nissan also argues that it should be granted summary judgment because Debtor is barred by the equitable doctrine of laches from belatedly maintaining its lien avoidance action against Nissan. The doctrine and its elements have been defined by the Sixth Circuit Court of Appeals as follows:

> Laches is the "negligent and unintentional failure to protect one's rights." *Elvis Presley Enter., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it. *See Induct–O–Matic–Corp. v. Inductotherm Corp.*, 747 F.2d 358, 367 (6th Cir.1984). In this Circuit, there is a strong presumption that a plaintiff's delay in asserting its rights is reasonable as long as an analogous state statute of limitations has not elapsed. *Elvisly Yours*, 936 F.2d at 894.

*Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir.2002).

■ Nissan erroneously argues that it should have the benefit of a presumption of prejudice because Debtor did not file his motion to avoid Nissan's lien until well after the two-year statute of limitations for filing fraudulent transfer actions had run. However, the statute of limitations for a trustee to bring such avoidance actions has no relationship whatsoever to a debtor's diligence, or lack thereof, in filing a motion under § 522(f) to avoid a judicial lien. The § 546(a) statute of limitations applies to avoidance actions specifically itemized by code section, including those to avoid fraudulent transfers under § 548. That § 546(a) does not include a reference to § 522(f) does not suggest that § 546(a) is an analogous statute of limitations to which Debtor should be held accountable; instead, the unequivocal statutory language compels the conclusion that § 546(a) was never intended to apply to motions to avoid liens under § 522(f). Section 522(f)

motions can be filed at any time during the case and, not uncommonly, bankruptcy cases have been reopened after administrative closure to allow a debtor to belatedly avoid a subject lien.

Nissan cites a single case for the proposition that debtor motions to avoid liens must be barred if not filed prior to discharge. *See In re Smiley*, 26 B.R. 680 (Bankr.Kan.1982). However, that is a decidedly minority view, with the vast majority of courts, including those in the Southern District of Ohio, holding that bankruptcy cases can be reopened for the purpose of lien avoidance based on equitable considerations. *See, e.g., Rheinbolt v. Credit Thrift of America, Inc. (In the Matter of Rheinbolt)*, 24 B.R. 167, 170 (Bankr.S.D.Ohio 1982) ("[T]he majority of cases ... permit complaints to avoid liens to be filed at any time, subject to equitable considerations."); *Bledsoe v. Household Finance Corporation (In the Matter of Bledsoe)*, 28 B.R. 210 (Bankr.S.D.Ohio 1983) ("As a general rule, an action for lien avoidance is not barred by discharge of the debtor."); 9A Am.Jur.2d *Bankruptcy* § 1556 (2008) (compiling minority and majority cases regarding reopening bankruptcy cases to avoid liens). Even in the *Smiley* case such a hard and fast rule was unnecessary because there the creditor had relied on the debtors' inactivity, made uncontested filings in the bankruptcy case, and then proceeded in state court to foreclose its lien before debtors took any action to protect their interests. *Smiley*, 26 B.R. at 687. In other words, the creditor had been prejudiced, the debtors had been exceptionally negligent, and the equities clearly favored the creditor. In the instant case, by way of contrast, the bankruptcy case has not been closed, Debtor's lien avoidance motion is reasonably timely, and Nissan has taken no action to foreclose its lien and has not otherwise relied to its detriment on Debtor's later filing of his motion.

■■■ Contrary to Nissan's argument, it is Debtor and not Nissan who benefits from a presumption. Under the Sixth Circuit standard quoted above, Debtor, having filed his motion prior to any applicable or analogous statute of limitation, would benefit from a "strong presumption" that his delay was reasonable. *Nartron*, 305 F.3d at 408. Given that presumption, Nissan must support its laches claim with "compelling reasons" exceeding the ordinary assertion of "unreasonable delay and prejudice." *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir.1991). In the absence of any statute or rule encouraging or requiring lien avoidance motions to be filed promptly or within a defined period of time, and there being no other apparent factors evidencing negligence or culpable delay by Debtor, the court cannot discern the "lack of diligence" prerequisite to applying the doctrine of laches.

Nissan is equally unsuccessful in establishing the second element of laches, a resulting prejudice to its interests. Nissan's primary argument is that it has been prejudiced by the passage of time in that it will now be more difficult to establish the value of debtor's Property as of the date of the bankruptcy filing. Based on this vague assertion, it is difficult to quantify the degree of prejudice Nissan may have sustained, but it is doubtful that such an appraisal of the Property would be appreciably more difficult now than it would have been one or two years ago. In any event, this sort of ordinary prejudice inherent in the passage of time does not constitute a "compelling reason" sufficient to invoke laches, particularly where Debtor's "delay" is presumptively reasonable.

## CONCLUSION

For all of the foregoing reasons, the court **DENIES** the Motion for Summary Judgment (doc. 100) filed by Nissan Motor Acceptance Corporation.

**IT IS SO ORDERED.**