RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 08a0420p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LPP MORTGAGE, LTD., and WILLIAM W.
LAWRENCE, Trustee,

     *Plaintiffs-Appellees*,

   v.

STUART C. BRINLEY; FREDRICK L. RADCLIFFE, JR.,
     *Defendants-Appellants*.

No. 07-6211

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
Nos. 06-00553; 06-00552—John G. Heyburn II, Chief District Judge.

Argued: September 18, 2008

Decided and Filed: November 24, 2008

Before: MOORE and COOK, Circuit Judges; HOOD, Senior District Judge.[*]

_____

### COUNSEL

**ARGUED:** Richard A. Schwartz, KRUGER, SCHWARTZ & MORREAU, Louisville, Kentucky, for Appellants. Rick D. DeBlasis, LERNER, SAMPSON & ROTHFUSS, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Richard A. Schwartz, KRUGER, SCHWARTZ & MORREAU, Louisville, Kentucky, for Appellants. Rick D. DeBlasis, Shannon O'Connell Egan, Cynthia M. Roselle, LERNER, SAMPSON & ROTHFUSS, Cincinnati, Ohio, for Appellees.

_____

### OPINION

_____

  HOOD, District Judge. Debtors-Appellants Stuart C. Brinley ("Brinley") and Fredrick L. Radcliffe, Jr.("Radcliffe") (collectively, "Appellants") appeal the district court's opinion and order affirming the bankruptcy court's order which allowed the Trustee, William W. Lawrence, to revoke his abandonment of Appellants' real property. For the reasons set forth below, we affirm the district court's opinion and order.

---

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Stuart C. Brinley

On February 15, 2001, Brinley filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Kentucky.  On February 27, 2001, Brinley filed with the bankruptcy court, pursuant to 11 U.S.C. § 521(1), a list of creditors, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of his financial affairs.  In the schedule of assets and liabilities, Brinley listed a one-half interest in a house and lot located at 1007 Johnson Farm Road, Louisville, Kentucky (the "Property").

On April 9, 2001, pursuant to § 522(f) of the Bankruptcy Code, Brinley filed a motion to avoid the judgment lien that PNC Bank, Kentucky, Inc., held on the Property.  LPP Mortgage, Ltd. ("LPP"), the successor by assignment of the judgment lien, timely filed an objection to Brinley's motion.  On July 24, 2001, while the motion to avoid the lien was pending, the Trustee filed a motion to close the bankruptcy case.  The Trustee's Final Report was accepted by the bankruptcy court on November 28, 2001.  On May 24, 2002, the bankruptcy court decided Brinley's motion to avoid the lien, holding that LPP's lien was avoided in the amount of $18,418.00, leaving LPP with a judgment lien of $94,000.00 on the Property.

On May 31, 2002, Brinley appealed to the United States District Court for the Western District of Kentucky.  During the pendency of the appeal, on October 21, 2002, the bankruptcy court entered a final decree, the Trustee was discharged, and Brinley's bankruptcy case was closed.  On April 2, 2003, the district court issued an opinion reversing the bankruptcy court's decision and completely eliminating LPP's lien on the property.  LPP and Brinley cross-appealed to this Court.  On March 22, 2005, this Court issued an opinion reversing in part and affirming in part the decision of the district court.  Using the statutory framework of 11 U.S.C. § 522(f)(1), this Court concluded that LPP's judgment lien survived in the amount of $13,654.91 and was avoided to the extent of $98,763.44.  *Stuart C. Brinley v. LPP Mortgage, Ltd.* (*In re Brinley)*, 403 F.3d 415 (6th Cir. 2005).

On April 25, 2005, the bankruptcy court set aside the final decree and reopened the bankruptcy case.  On June 22, 2005, pursuant to this Court's direction, the bankruptcy court ordered that LPP was to retain a judgment lien in the amount of $13,654.91 and that the remainder of the lien was avoided.  On August 2, 2005, the bankruptcy court entered a final decree and closed the bankruptcy case.

On October 20, 2005, LPP filed a motion to reopen the bankruptcy case and a motion pursuant to 11 U.S.C. § 551 to preserve for the benefit of the bankruptcy estate the unencumbered equity in Brinley's Property that was created by virtue of the partial avoidance of LPP's lien.[1]  On October 21, 2005, the bankruptcy court ordered that the case be reopened.  On June 20, 2006, Brinley filed an objection to LPP's motion to preserve unencumbered equity arguing, *inter alia*, that the Trustee had abandoned his interest in the Property, thus making § 551 inapplicable.

A hearing was held on July 25, 2006, at which time the Trustee orally joined in LPP's motion to preserve the unencumbered equity for the bankruptcy estate. On August 17, 2006, the bankruptcy court granted LPP's motion to have the unencumbered equity preserved for the benefit of the bankruptcy estate.  In its memorandum, the bankruptcy court found that the Trustee's technical abandonment of the property was revocable under Federal Rule of Civil Procedure 60(b) and that

---

[1]11 U.S.C. § 551 states: "Any transfer avoided under Section 522, 544, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.

equity dictated that the abandonment be revoked. On August 25, 2006, Brinley filed a Notice of Appeal to the United States District Court for the Western District of Kentucky. The district court affirmed the decision of the bankruptcy court. Brinley appealed.

### B. Frederick L. Radcliffe, Jr.

On February 15, 2001, Radcliffe filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Kentucky. On February 27, 2001, Radcliffe filed with the bankruptcy court, pursuant to 11 U.S.C. § 521(1), a list of creditors, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of his financial affairs. In the schedule of assets and liabilities, Radcliffe listed a fee simple interest in a house and lot located at 2600 Six Mile Lane, Louisville, Kentucky (the "Property"). Radcliffe claimed an exemption in the Property in the amount of $6,000.00. On April 9, 2001, Radcliffe filed a motion to avoid the judgment lien of PNC Bank, Kentucky, Inc., pursuant to 11 U.S.C. § 522(f). LPP, the successor by assignment of the judgment lien, filed a timely objection to Radcliffe's motion. On May 24, 2002, the bankruptcy court entered its decision granting in part and denying in part Radcliffe's motion to avoid. The bankruptcy court held that LPP's lien was avoided in the amount of $48,418.35, leaving LPP with a judgment lien of $64,000.00 on the Property. On May 31, 2002, Radcliffe appealed the decision to the United States District Court for the Western District of Kentucky. On October 21, 2002, while the appeal was pending, the bankruptcy court closed Radcliffe's bankruptcy case.

On March 31, 2003, the district court issued its opinion reversing the bankruptcy court and completely eliminating LPP's lien on the property. LPP appealed to this Court. Following the holding in *In re Brinley*, 403 F.3d 415, this Court opined that LPP's lien was avoided in its entirety. *LPP Mortgage, Ltd. v. Fredrick L. Radcliffe, Jr.*, 2005 WL 712746 (6th Cir. March 30, 2005).

On October 19, 2005, LPP filed a motion to reopen the bankruptcy case and a motion pursuant to 11 U.S.C. § 551 to preserve for the benefit of the bankruptcy estate the unencumbered equity in Radcliffe's property that was created by virtue of avoidance of LPP's lien. On October 20, 2005, the bankruptcy court reopened the bankruptcy case. On June 20, 2006, Radcliffe filed an objection to LPP's motion arguing, *inter alia*, that the Trustee had abandoned his interest in the Property, thus making § 551 of the Bankruptcy Code inapplicable.

A hearing was held on July 25, 2006, at which time the Trustee orally joined in LPP's motion to preserve the unencumbered equity for the benefit of the estate. Using the same analysis as in *Brinley*, on August 17, 2006, the bankruptcy court entered an order granting LPP's motion to have the unencumbered equity preserved for the benefit of the bankruptcy estate. Radcliffe appealed to the United States District Court for the Western District of Kentucky. The district court, after consolidating Appellants' appeals, affirmed the decisions of the bankruptcy court. Radcliffe and Brinley appealed to this Court.

### II. STANDARD OF REVIEW

When reviewing an order of a bankruptcy court on appeal from a decision of a district court, this Court "review[s] the bankruptcy court's order directly and give[s] no deference to the district court's decision." *In re Lee*, 530 F.3d 458, 463 (6th Cir. 2008) (citing *Rogan v. Bank One, Nat'l Ass'n (In re Cook)*, 457 F.3d 561, 565 (6th Cir. 2006)). The bankruptcy court's findings of fact are reviewed for clear error. *Id.* Conclusions of law made by the bankruptcy court are reviewed de novo. *Id.* Equitable determinations made by bankruptcy courts are reviewed for an abuse of discretion. *In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 527 (6th Cir. 2002).

## III. ANALYSIS

### A. Standing

For the first time on appeal, appellants argue that LPP lacked standing to file motions seeking to preserve the avoided liens (or unencumbered equity) for the benefit of the bankruptcy estate. The precise nature of appellants' standing argument is not clear. We will assume that appellants argue that LPP lacked Article III standing. Although the issue of standing was not raised in the courts below, Article III "standing . . . is jurisdictional and not subject to waiver." *Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). We must independently satisfy ourselves that the federal courts have subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). To satisfy the standing requirements of Article III, a party must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). We conclude that LPP meets these requirements.

In the *Brinley* case, LPP is both a secured creditor with a judgment lien in the amount of $13,654.91 and an unsecured creditor in the amount of $98,763.44. In the *Radcliffe* case, LPP is an unsecured creditor in the amount of $118,418.35. As the largest unsecured creditor in each of these cases, LPP clearly has an economic interest in having the avoided judgment liens (or unencumbered equity) preserved for the benefit of the bankruptcy estates.

When an avoided lien is preserved for the benefit of the estate under 11 U.S.C. § 551, the estate succeeds to the priority that the avoided and preserved lien had with respect to competing interests. *See* 5-551 COLLIER ON BANKRUPTCY ¶ 551.02 (15th ed. 2008). If the avoided liens are preserved in these cases, the Trustee may sell the respective properties, and, after paying senior lienholders and the debtor's exemption, distribute the remaining proceeds to unsecured creditors, including LPP, before paying junior lienholders (i.e., lienholders junior to LPP's original judgment liens).

Accordingly, we conclude that the premature closing of the bankruptcy estates and the technical abandonment of the properties has caused LPP a concrete injury, and that this injury may be redressed if the abandonment is revoked so that the avoided liens can be preserved for the benefit of the estates.[2]

### B. Technical Abandonment Is Revocable

The parties agree that pursuant to 11 U.S.C. § 554, the Properties were abandoned to Appellants upon the close of the bankruptcy cases because the Trustee did not administer the Properties. The issue in this case, whether technical abandonment is revocable, is an issue of first impression in this Circuit.[3]

---

[2]It is not clear whether appellants also argue that LPP lacks standing under the prudential doctrine of appellate standing that applies in bankruptcy cases. This doctrine generally applies only to a party who has *appealed* a bankruptcy court's order to the district court. *See*, *e.g.*, *In re Troutman Enters., Inc.*, 286 F.3d 359, 364-65 (6th Cir. 2002). In the instant cases, however, LPP did not appeal an order of the bankruptcy court, but instead filed motions in the bankruptcy court to reopen the cases and preserve the avoided liens for the benefit of the bankruptcy cases.

[3]Often referred to as technical abandonment, 11 U.S.C. § 554(c) provides that "any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor." At oral argument, Brinley suggested that his Property was not technically abandoned as envisioned by 11 U.S.C. § 554(c), but was instead intentionally abandoned by the Trustee pursuant to 11 U.S.C. § 554(a) or (b). The lower courts

Arguing that technical abandonment is irrevocable, Appellants assign as error the bankruptcy court's decision granting LPP's motions to preserve the unencumbered equity in the Properties for the bankruptcy estate. Appellees argue that when the cases were reopened, the abandonments were automatically revoked and the Properties were re-vested into the property of the estates, triggering the application of 11 U.S.C. § 551, which provides that "[a]ny transfer avoided under section 522 . . . of this title, is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.

Finding no mandatory or persuasive authority within this Circuit, the bankruptcy court surveyed how other courts have answered the question of whether technical abandonment is revocable. Recognizing that the circuit and district courts are split on the question of the effect of technical abandonment upon the re-opening of a bankruptcy case, the bankruptcy court discussed several approaches.

In its thorough and well-reasoned opinion, the bankruptcy court found that "a number of cases recognize a general rule that abandonment is irrevocable, even if it is subsequently discovered that the abandoned property had greater value that previously believed." The bankruptcy court noted that while a policy of absolute irrevocability "encourages due diligence by the Trustee in determining which assets to administer while also providing the debtor a sense of finality once a case is closed," it does not take into consideration inadvertence, excusable neglect, or other equitable considerations. The bankruptcy court also rejected the bright-line rule that reopening cases automatically brings abandoned property back into the estate, finding that such a policy would "clearly thwart any policy favoring finality and give the trustee the proverbial second bite of the apple."

Believing the courts should have limited discretion in determining when technical abandonment can be revoked, the bankruptcy court eventually settled on the approach adopted by the Tenth Circuit Court of Appeals in *In re Woods*, 173 F.3d 770 (10th Cir. 1999). The Tenth Circuit's approach provides that the question of whether abandonment is revocable is to be determined by applying the guidelines of Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy matters by Federal Rule of Bankruptcy Procedure 9024. *Woods*, 173 F.3d at 776. The bankruptcy court stated:

> [Using a Rule 60(b) analysis] provides a certain amount of finality in that abandonments are not automatically revoked upon the re-opening of a bankruptcy case or granted without any limitations or restrictions. Safeguards are in place to protect the debtor against open ended abandonment revocations and the potential subsequent turnover of appreciated property. Finally, it requires parties to act with due diligence, and yet allows some flexibility in situations where relief is appropriate.

We are persuaded as well and affirm the bankruptcy court's reliance on Fed. R. Civ. P. 60(b) to determine when abandonment is revocable. The application of Fed. R. Civ. P. 60(b) strikes the appropriate balance between promoting finality and allowing courts to grant relief in limited circumstances.

---

determined that Brinley's Property was technically abandoned. We decline to revisit that factual determination, finding that it was not clearly erroneous.

### C. Federal Rule of Civil Procedure 60(b)

Applying Fed. R. Civ. P. 60(b) to the facts of the instant case, the bankruptcy court found that the abandonment of the Properties was revocable. Fed. R. Civ. P. 60(b) provides, in pertinent part:

> **Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On a motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . .; (4) the judgment is void . . .; (5) the judgment has been satisfied, released, or discharged or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). The bankruptcy court found that subsections (1), (5), and (6) were all grounds for revoking the abandonment and preserving the unencumbered equity for the benefit of the estate pursuant to 11 U.S.C. § 551. Specifically, in Brinley's case, the bankruptcy court stated:

> The Trustee's, as well as this Court's, reliance upon well established law regarding priorities and lien avoidance was certainly reasonable at the time the motion to avoid LPP's lien was filed. Under the law as the Trustee understood it at the time, there was no equity in the property for the benefit of the bankruptcy estate. Thus, the Trustee's action in not administering this asset was not the result of mere carelessness, but instead the result of the application of lien avoidance law as it was understood at that time. As later held by the District and Circuit Court, this application was incorrect. Under these circumstances, any "neglect" by the Trustee in not administering this asset was excusable. Additionally, the equities in this case certainly fall in favor of setting aside abandonment. The debtor filed his motion to avoid LPP's judgment lien because that lien impaired his exemption. Under the Circuit's holding on the lien avoidance issue, that exemption is no longer impaired. It only makes sense that the additional equity created by the lien avoidance go to the bankruptcy estate and not go to the junior mortgage holder whose position was improved by the debtor's actions. Nor should the equity beyond the two mortgages automatically fall to the debtor at the expense of the bankruptcy estate. . . .Clearly the equities dictate this windfall go to the bankruptcy estate rather than the debtor.

Appellants argue that Fed. R. Civ. P. 60(b)(1) did not entitle the Trustee to relief, as any neglect on the part of the Trustee in abandoning the Properties was not excusable. Regardless of the applicability of 60(b)(1), the Trustee was entitled to relief pursuant to the equitable considerations of subsections (5) and (6) of Fed. R. Civ. P. 60(b).

To borrow language from the bankruptcy court, the Trustee was entitled to relief under Fed. R. Civ. P. 60(b)(5) and (6) "based on principles of equity, and the windfall to the debtors and the junior lienholders [if the abandonment were not revoked]." While Appellants contend that the equities fall in their favor because they were denied a "fresh start," "presumably expended funds to maintain the Property as well as making mortgage payments," the Property had "presumably appreciated," and preserving the now unencumbered equity for the estate for the benefit of the unsecured creditors would produce a "tremendous windfall to the creditors," they offered no documentary evidence to support this contention. To argue that revoking the abandonment will result in a windfall to the creditors is illogical. The unsecured creditors who stand to benefits from the revocation of the abandonment are merely seeking to recoup a portion of what they are owed by

Appellants and will not be entitled to more than they are owed.  The bankruptcy court did not abuse its discretion in determining that the equities weighed in favor of revoking the abandonment.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the opinion and order of the district court.