ELECTRONIC CITATION:  2012 FED App. 0012P (6th Cir.)
File Name:  12b0012p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

In re:   JOEL DeGROOT,               )
                                          )
                                          )  No. 11-8083
       Debtor.             )
_____  )

Appeal from the United States Bankruptcy Court
for the Western District of Michigan
Case No. 05-14996.

Argued: November 13, 2012

Decided and Filed: December 27, 2012

Before:  EMERSON, HARRIS, and SHEA-STONUM, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

_____

**ARGUED:**  Jeff A. Moyer, THE BANKRUPTCY GROUP, INC., Wyoming, Michigan, for Appellant.  James R. Oppenhuizen, KELLER & ALMASSIAN, PLC, Grand Rapids, Michigan, for Appellee. **ON BRIEF:**  Jeff A. Moyer, THE BANKRUPTCY GROUP, INC., Wyoming, Michigan, for Appellant.  James R. Oppenhuizen, KELLER & ALMASSIAN, PLC, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

     **GEORGE W. EMERSON**, **Jr.**, Bankruptcy Appellate Panel Judge.  At issue in this appeal is a November 23, 2011 decision in which the bankruptcy court determined that an unscheduled asset which the chapter 7 trustee had partially administered should be deemed abandoned to the debtor's ex-wife pursuant to 11 U.S.C. § 554(c) and (d).  In so doing, the bankruptcy court relied on the "[u]nless the court orders otherwise" language found within § 554(c) and (d) and on the unique procedural and factual background of this particular case.

For the reasons that follow, the Panel affirms the bankruptcy court's determination that the unscheduled asset should be deemed abandoned to the debtor's ex-wife pursuant to 11 U.S.C. § 554(c) and (d).[1]

## I.   ISSUES ON APPEAL

The issue presented by this appeal is whether the bankruptcy court erred in determining that an unscheduled asset which the chapter 7 trustee had partially administered should be deemed abandoned to the debtor's ex-wife pursuant to 11 U.S.C. § 554(c) and (d).

## II.   JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Michigan has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order to abandon property of the estate is a final order for purposes of appeal. *Stark v. Moran (In re Moran)*, 385 B.R. 799 (B.A.P. 6th Cir. 2008) (table); *Malden Mill Indus., Inc. v. Maroun (In re Malden Mills Indus., Inc.)*, 303 B.R. 688, 696 (B.A.P. 1st Cir. 2004).

The determination as to the abandonment in this case presents a mixed question of law and fact. Courts faced with reviewing mixed questions of law and fact must break down the issue "into its constituent parts and apply the appropriate standard of review for each part." *Moran v. LTV Steel*

---

[1]In addition to concluding that a court may deem property abandoned under 11 U.S.C. § 554(c) and (d), the bankruptcy court ruled in the alternative that the chapter 7 trustee should be judicially estopped from administering the remainder of the asset. Because the Panel is affirming the bankruptcy court's decision based on its interpretation and application of § 554(c) and (d), it is unnecessary for the Panel to address the alternative theory of judicial estoppel.

*Co., Inc.* (*In re LTV Steel Co., Inc.*), 560 F.3d 449, 452 (6th Cir. 2009). The initial issue of whether the bankruptcy court properly determined that it has the authority to deem property abandoned under 11 U.S.C. § 554(c) or (d) is a question of statutory interpretation which is reviewed *de novo*. *Kottmeier v. United States* (*In re Kottmeier*), 240 B.R. 440, 442 (M.D. Fla. 1999). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted).

The remaining issue of whether the bankruptcy court properly exercised its discretion under the phrase "[u]nless the court orders otherwise" in § 554(c) and (d) is a question of fact which is reviewed for an abuse of discretion. *LPP Mortg., Ltd. v. Brinley*, 547 F.3d 643, 648 n.3 (6th Cir. 2008); *DeVore v. Marshack* (*In re DeVore*), 223 B.R. 193, 198 (B.A.P. 9th Cir. 1998). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, SRL* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (citations omitted); *see also Mayor of Balt., Md. v. W. Va.* (*In re Eagle-Picher Indus., Inc.*), 285 F.3d 522, 529 (6th Cir. 2002) ("An abuse of discretion is defined as a 'definite and firm conviction that the [court below] committed a clear error of judgment.' ") (citation omitted). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs. Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000).

## III.   FACTS

On December 18, 2002, Joel DeGroot and Joy DeGroot obtained a judgment of divorce from the Ottawa County Circuit Court of Michigan. Pursuant to the terms of the divorce, Joel DeGroot was ordered to pay child support to Joy DeGroot for the parties' two minor children. The state court awarded the parties' marital residence to Joy DeGroot and ordered her to pay Joel DeGroot $48,000.00 for his share of equity in the property ("the Receivable"). The $48,000.00 was to be paid in 3 installments as follows:  $10,000.00 within 3 months of entry of the divorce judgment; $10,000.00 within 7 years after entry of the divorce judgment; and $28,000.00 when the parties'

youngest child reached the age of 18, the home was sold, or Joy DeGroot died or remarried. The final payment of $28,000.00 was to bear interest at the rate of 2% per annum from the date of entry of the divorce. Pursuant to the divorce judgment, the entire $48,000.00 constituted a lien against the marital residence. Joy DeGroot made the first payment of $10,000.00 on March 18, 2003.

A little over two years later, Joel DeGroot ("Debtor") filed a no-asset chapter 7 petition for bankruptcy relief. Debtor listed Joy DeGroot on Schedule F with a claim of $10,336.33 for "unpaid support and medical bills." He did not, however, list the Receivable or the lien on the marital residence as assets on his bankruptcy schedules.

While Debtor's case was pending, Joy DeGroot continued to have difficulty collecting child support from Debtor. At some point in 2006, the family court issued a show cause order to the Debtor regarding his poor payment history for child support. In an attempt to resolve the issue and to avoid possible incarceration, Debtor entered into negotiations with Joy DeGroot to settle the child support delinquency.

Although Debtor's bankruptcy attorney, James Sullivan ("Sullivan"), was aware of the state court negotiations, he did not represent Debtor in these negotiations. Sullivan did, however, inform Jeff Moyer, the chapter 7 trustee ("Trustee"), of the negotiations and the proposed settlement. In a January 18, 2006 letter, Sullivan asked the Trustee to abandon the $38,000.00 lien. Given the large number of pre-BAPCPA filings, the Trustee was overwhelmed with work and did not to respond to Sullivan's letter until March 15, 2006. In that letter, the Trustee requested additional information from Sullivan about the lien and the Receivable as well as other property owned by Debtor. On March 22, 2006, the Trustee filed a "Form 1, Individual Estate Property Record and Report, Asset Cases" which identified the Receivable, along with several other types of nonexempt property, as potential assets of the estate.

Sullivan sent the Trustee a second letter on April 30, 2006, asking for the Trustee's position on the state court negotiations. The Trustee did not respond. Sullivan sent the Trustee a third letter on May 15, 2006, requesting an answer on the Trustee's position with regard to the $38,000.00 lien

and the money due thereunder. Despite being informed of the state court proceedings, the Trustee took no affirmative steps to halt the negotiations or to intervene in the action.

The ultimate state court settlement reached by Joy DeGroot and Debtor provided that (1) Joy DeGroot would waive her claim to any past or future child support from Debtor, and (2) Debtor would release his lien on the marital residence and pay Joy DeGroot the sum of $11,500.00. The Ottawa County Circuit Court approved the settlement on June 2, 2006 ("Stipulation"). Although Sullivan advised Debtor that it would be necessary to obtain relief from the automatic stay prior to entering the state court settlement, neither Debtor nor Joy DeGroot sought relief from the bankruptcy court prior to entering into the Stipulation.

On February 5, 2007, the Trustee sent a letter to Sullivan stating:

> This correspondence is to restart discussions on a case that unfortunately has slipped between the cracks and it appears nothing has transpired in approximately 9 months. I assume nothing of any import has transpired between Mr. DeGroot and his ex-wife given the fact that no lift stay (as required) was ever filed in [Joel] DeGroot's Chapter 7 bankruptcy to allow any state divorce court to re-assert jurisdiction over either Mr. DeGroot or more importantly Mr. DeGroot's assets such as the property settlement to which he's entitled based upon the divorce judgment.

Appellee's Brief at 46. That same day, the Trustee filed a "Notice of Assignment of Divorce Lien" with the Ottawa County Register of Deeds stating that ownership of the lien belonged to Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). Joy DeGroot allegedly did not receive notice of this assignment.

On June 21, 2007, fifteen months after filing his "Form 1," the Trustee filed a notice of possible dividends to creditors informing them that there might be assets available for distribution. The bankruptcy court served this notice on creditors on June 28, 2007. Joy DeGroot did not file a claim at that time presumably because she believed the state court settlement had extinguished Debtor's liability for child support.

Nine months later, on March 28, 2008, the Trustee's Report of No Distribution ("NDR") was entered on the docket as a minute entry only. The text of this entry provides:

Trustee of this estate reports and certifies that the trustee has performed the duties required of a trustee under 11 U.S.C. [§] 704 and has concluded that there are no assets to administer for the benefit of creditors of this estate. I have received no funds or property of the estate, and paid no monies on account of the estate. Wherefore, the trustee prays that this report be approved and the trustee be discharged from office.

The bankruptcy court issued the final decree on May 15, 2008, and closed the case.

In the fall of 2010, Joy DeGroot attempted to refinance her mortgage on the marital residence. The title work for the refinancing uncovered the Trustee's 2007 notice of assignment of lien on the home. Having relied on the advice of the attorney who represented her in the state court proceedings, Joy DeGroot stated that she had been under the impression that the $38,000.00 lien against the home had been released in 2006. As a result, she had not made the $10,000.00 payment that would have been due under the terms of the divorce judgment on December 18, 2009, nor did she think the remaining $28,000.00 would ever be due and payable. Instead, she made spending decisions as if the $38,000.00 had been extinguished. She made repairs to her home and incurred debt for her children's expenses including orthodontia work. She also had not attempted to collect any child support from Debtor because she believed his child support obligations had been discharged by the Stipulation.

On December 30, 2010, the Trustee filed a motion to reopen Debtor's case pursuant to 11 U.S.C. § 350(b). As grounds for this motion, the Trustee alleged that he had "reason to believe there was non-exempt property of the bankruptcy estate which remains unadministered." The bankruptcy court granted the Trustee's motion on January 3, 2011.

Because the Trustee considered the Stipulation void based on the parties' failure to seek relief from the automatic stay, the Trustee refused to release his lien on Joy DeGroot's home. In need of refinancing, Joy DeGroot agreed to enter into negotiations with the Trustee and the title company. The Trustee agreed to subordinate his lien to that of the mortgage company in exchange for a $5,000.00 payment from Joy DeGroot. The Trustee executed a Subordination of Mortgage on March 14, 2011.

Joy DeGroot subsequently filed letters with the bankruptcy court on May 20, 2011, and July 20, 2011, detailing the history of the case and her distress over still being liable for the Receivable. According to these letters, the Trustee informed her that he would be collecting the remaining $33,000.00 due under the Receivable when her youngest child turned 18 in 2013. The bankruptcy court treated her letters as motions and set them for a hearing on August 17, 2011.

On August 9, 2011, the Trustee filed a second notice of possible dividends to creditors. Joy DeGroot filed a proof of claim on November 7, 2011, for $58,700.00 in unpaid child support. She alleged the claim was wholly secured pursuant to Michigan Compiled Laws § 552.625(a).

At the pretrial hearing on Joy DeGroot's motions, the Trustee did not allege that he had filed the NDR in error. Instead, he stated that

> [b]ecause of the triggering events [*i.e.*, payment due dates under the [Judgment of Divorce]] occurring multiple years in the future, this is one of those situations that doesn't fit in the box nicely or cleanly. And the U.S. Trustee's office is not fond of letting trustees hold cases open for six or seven or eight years. So we took the only action we could at the time, and then closed the case because there were no other scheduled nonexempt assets, which is what the trustee's NDR filed with the court that causes the court to close it . . . says.

*In re DeGroot*, 460 B.R. 159, 165 (Bankr. W.D. Mich. 2011) (quoting Status Conf. Tr. at 11:11-20).

The bankruptcy court conducted a hearing on Joy DeGroot's motions on October 27, 2011.

On November 23, 2011, the bankruptcy court issued its opinion and order in which it concluded that, while the trustee may administer the $5,000.00 he received from Joy DeGroot, the balance of the Receivable should be deemed abandoned pursuant to 11 U.S.C. § 554(c) and (d). The opinion and order also directed the Trustee to release the lien on Joy DeGroot's residence by filing a formal discharge document in recordable form with the Ottawa County Register of Deeds within 21 days from entry of the order.[2]

---

[2]In its opinion, the bankruptcy court also analyzed Joy DeGroot's claims that she held a secured claim for the entire amount of unpaid child support and a lien against the $5,000.00 payment she made to the Trustee under Michigan law. Neither party to this appeal asserts that any of the

In setting forth the reasons for its decision, the bankruptcy court first analyzed the 11 U.S.C. § 362 automatic stay as it related to the effectiveness of the Stipulation. Because neither Joy DeGroot nor Debtor ever obtained relief from the automatic stay, the bankruptcy court concluded that the Stipulation was voidable pursuant to 11 U.S.C. § 362 and *Easley v. Pettibone Michigan Corporation*, 990 F.2d 905 (6th Cir. 1993). The bankruptcy court determined there were no equitable considerations that weighed against setting the Stipulation aside. Because the trustee correctly relied on the protections of the automatic stay, the Trustee's failure to take any steps to intervene in the Stipulation did not alter the bankruptcy court's decision. The bankruptcy court therefore declared the Stipulation void and stated that the Receivable was still part of the bankruptcy estate. In so doing, the bankruptcy court noted that voiding the Stipulation also meant that Joy DeGroot's claims for child support were still active and might be available for setoff under 11 U.S.C. § 553. Neither party to this appeal challenges this holding.

The bankruptcy court then turned its attention to the heart of the case: whether the Receivable should be abandoned to Joy DeGroot. The bankruptcy court began its analysis with 11 U.S.C. § 554(c) and (d). The bankruptcy court noted that § 554(c) gives debtors and chapter 7 trustees incentives to comply with certain obligations under the Bankruptcy Code. First, § 554(c) gives debtors an incentive to accurately schedule their assets because any scheduled property that is not administered revests in the debtor when the case is closed. Second, § 554(c) gives trustees an incentive to comply with their statutory duty to promptly administer property of the estate under § 704(a)(1) because property that is scheduled, but which the trustee fails to administer, reverts back to the debtor when a case is closed. The bankruptcy court concluded that neither Debtor nor the Trustee in this case responded to § 554(c)'s incentives.

As to Debtor, the bankruptcy court stated that Debtor did not list the Receivable or the lien thereunder on his schedules even though the existence of both was disclosed to the Trustee.

---

bankruptcy court's rulings with respect to Joy DeGroot's secured status, priority as a lien creditor, or the $5,000.00 payment were in error. For that reason, the details about these issues are not set forth herein.

As to the Trustee, the bankruptcy court stated that he failed to comply with two of his statutory obligations under § 704(a). First, the Trustee failed to appropriately administer the asset as required by § 704(a)(1) because the only control he exerted over the Receivable was to file the notice of assignment of lien in the Ottawa County land records in 2007. He did not attempt to negotiate with Joy DeGroot at that time to reduce the Receivable to money. Second, the Trustee failed to file an accurate final report with the bankruptcy court in violation of § 704(a)(9). Even though the Trustee was aware of the Receivable and had filed the notice of assignment of the lien at the time he filed his NDR, the NDR states "the case trustee has determined that there are no assets to administer." March 28, 2008 Docket Entry, Bankr. Case No. 05-14996.

The court noted that the Trustee never alleged that he filed the NDR in error. Instead he stated that the United States Trustee was not in favor of keeping chapter 7 cases open for several years and that cases such as this one, in which a long-term Receivable is among the debtor's assets, are not typical. The Trustee also argued that he was inundated with cases during the weeks preceding BAPCPA's enactment. The court noted that the Trustee filed the NDR "in reliance on a technical argument that, under § 554(c), his knowledge of an unscheduled asset (and partial administration of the same) is irrelevant for purposes of determining whether it remained within the estate or not." *DeGroot*, 460 B.R. at 171.

The bankruptcy court recognized that the Trustee's interpretation of § 554(c) was partially correct. Unscheduled property normally remains property of the estate even if the trustee has knowledge of the asset. The court noted, however, that because both § 554(c) and (d) contain the phrase "unless the court orders otherwise," "property that is not scheduled and not administered could nevertheless be deemed abandoned" in appropriate circumstances. *Id.* at 170. The bankruptcy court concluded that this discretionary ability to "order otherwise" should be used to prevent a "miscarriage of justice" and to mitigate unfair consequences of § 554(c) and (d)'s default rules. *Id.* at 171. The bankruptcy court found that the appropriate circumstances existed in this case because "neither the Debtor nor the Trustee responded appropriately to [§ 554(c) and (d)'s] incentives, and unfortunately, Ms. DeGroot has borne the brunt of these errors or omissions." *Id.* at 170.

The bankruptcy court issued its Opinion and Order on November 23, 2011. The Trustee filed a motion to extend the time to file a notice of appeal on December 7, 2011. The bankruptcy court granted this motion on December 8, 2011, which gave the Trustee fourteen days from entry of the order to file a notice of appeal. The Trustee filed his notice of appeal on December 21, 2011. This notice was timely.

## IV.   DISCUSSION

Section 554 of the Bankruptcy Code provides:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554.[3] Section 554 provides for two types of abandonment. Subsections (a) and (b) provide for what is commonly referred to as specific or intentional abandonment. Pursuant to § 554(a), the trustee or debtor in possession may provide notice of an intent to abandon property if that property "is burdensome to the estate" or "of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Section 554(b) allows for a "party in interest" to move for an order directing the trustee to abandon property for the same reasons as stated in § 554(a). Before property may be abandoned under either of these subsections, notice of the intent to abandon must be given to the "United States trustee, all creditors, indenture trustees, and committees elected pursuant to § 705 or

---

[3]Although pre-BAPCPA law applies to this case based on the Debtor's filing date, the version of § 554 in effect prior to October 2005 is identical to the current version.

appointed pursuant to § 1102 of the Code." Fed. R. Bankr. P. 6007(a). "The requirements of notice, a hearing and court approval assure that the creditors . . . are given an opportunity to object to the return of any property to the bankrupt." *Bittel v. Yamato Int'l Corp.*, 70 F.3d 1271, at *4 (6th Cir. 1995) (table) (citation omitted) (internal quotation marks omitted).

Section 554(c) provides for the second type of abandonment which is often referred to as "abandonment by operation of law" or "technical abandonment." *See LPP Mortg., Ltd. v. Brinley*, 547 F.3d 643, 648 n. 3 (6th Cir. 2008); *In re Reiman*, 431 B.R. 901, 908 (Bankr. E.D. Mich. 2010). Pursuant to this subsection, property which the debtor schedules and which the trustee has not administered is abandoned to the debtor at the closing of the case "[u]nless the court orders otherwise." *See Stark v. Moran* (*In re Moran*), 566 F.3d 676, 679 (6th Cir. 2009). Unlike abandonments under § 554(a) and (b) which require some "initiative" by the trustee or a party in interest, abandonment under § 554(c) "occur[s] automatically upon the closing of the bankruptcy case." *Olson v. Aegis Mortg. Corp.* (*In re Bloxsom*), 389 B.R. 52, 59 (Bankr. W.D. Mich. 2008). Technical abandonment occurs without notice and a hearing. *DeVore v. Marshack* (*In re DeVore*), 223 B.R. 193, 197 (B.A.P. 9th Cir. 1998).

The final subsection of § 554, subsection (d), provides that, unless the court orders otherwise, property which is not abandoned under § 554(a), (b), or (c) and which is not administered in the case is not abandoned and remains property of the estate. As one court has recognized, § 554(d) is essentially a "fail-safe" provision that ensures property which the debtor fails to schedule and which the trustee does not administer remains within the estate. *Mele v. First Colony Life Ins. Co.*, 127 B.R. 82, 86 (D.D.C. 1991). Like § 554(c), § 554(d) contains the introductory phrase "[u]nless the court orders otherwise." 11 U.S.C. § 554(d).

In his brief on appeal, the Trustee was correct in several of his assertions. First, although a technical abandonment under § 554(c) is typically irrevocable, bankruptcy courts may revoke such abandonments in certain "limited circumstances." *Brinley*, 547 F.3d at 649. In making such a determination, a court must analyze whether the abandonment is revocable under the guidelines set forth in Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9024. *Id.* "The application of Fed. R. Civ. P. 60(b) strikes

the appropriate balance between promoting finality and allowing courts to grant relief in limited circumstances." *Id.*

Although he set forth the proper mode of analysis for revocation of a technical abandonment under § 554(c), the Trustee's argument with respect to this issue must fail. The bankruptcy court in this case did not revoke an abandonment of the Receivable. In fact, in its opinion, the bankruptcy court recognized that Debtor's failure to list the Receivable on his schedules "gave the Trustee the authority to negotiate with Ms. DeGroot after the court reopened the case on his motion *because the Receivable technically remained within the estate under 11 U.S.C. § 554(d) at the time*." *DeGroot*, 460 B.R. at 170 (emphasis added). The issue before the bankruptcy court at the October 27, 2011 hearing was not whether it should revoke the abandonment of the Receivable. Rather, the issue before the bankruptcy court was whether it had the authority to deem the Receivable abandoned under § 554. As a result, the Trustee's assertion that the analysis of the issue in the case was constrained to the factors listed in Federal Rule of Civil Procedure 60(b) is without merit. There was no order, final or otherwise, from which the bankruptcy court was granting relief.[4]

The second issue about which the Trustee was correct was that technical abandonment of an asset pursuant to § 554(c) ordinarily cannot occur if the Debtor failed to list the asset on his schedules. *Cundiff v. Cundiff* (*In re Cundiff*), 227 B.R. 476, 478 (B.A.P. 6th Cir. 1998); *Darrah v. Franklin Credit* (*In re Darrah*), 337 B.R. 313, 316 (Bankr. N.D. Ohio 2005) ("[P]roperty not properly scheduled remains property of the estate in perpetuity."). This is true even if the trustee had knowledge of the asset. *Vreugdenhill v. Navistar Int'l Transp. Co.*, 950 F.2d 524, 526 (8th Cir. 1991); *Cundiff*, 227 B.R. at 479. A debtor has an affirmative duty under 11 U.S.C. § 521(a)(1) to list all his assets and liabilities on his bankruptcy schedules. 11 U.S.C. § 521(a)(1) (2004). "When a debtor fails to list an asset on her schedules, it remains unadministered because the trustee has not been placed on notice of the existence of the asset." *Magana-Lopez v. JPMorgan Chase Bank, N.A.*

---

[4]The Trustee also argued that the bankruptcy court had no authority to order abandonment of the Receivable *nunc pro tunc*. This argument is also without merit. The bankruptcy court did not order abandonment of the Receivable *nunc pro tunc*. Rather, it deemed the Receivable abandoned as of the date its opinion was issued and it ordered the Trustee to discharge the lien within 21 days of issuance of the opinion. The relief granted by the bankruptcy court was prospective in nature.

(*In re Magana-Lopez*), Bankr. No. 6:10-bk-50387-SC, Adv. No. 6:11-ap-01170-SC, 2012 WL 1355553, at *3 (Bankr. C.D. Cal. Apr. 18, 2012).

Although the Trustee is correct that knowledge of an asset typically will not defeat abandonment under § 554(c), he overlooks the opening phrase in § 554(c) and (d): "Unless the court orders otherwise." "[T]he prefatory language of § 554(c), 'unless the court orders otherwise,' indicates that courts have discretion to *affect* or prevent technical abandonment simply by ordering otherwise." *DeVore*, 223 B.R. at 198 (emphasis added); *In re Shelton*, 201 B.R. 147, 155 (Bankr. E.D. Va. 1996) ("[A] plain reading of § 554(c) reveals that Courts have the discretion to modify or revise any 'technical abandonment' simply by ordering otherwise."). Because the same phrase appears in subsection (d) of § 554, the court's discretion to affect or prevent abandonment of estate property would be the same. "If the claim is not abandoned [under § 554(a), (b) or (c)], and *unless the bankruptcy court orders otherwise,* the claim 'remains property of the estate.'" *Charboneau v. Jordan*, No. 07-12929-BC, 2010 WL 148664, at *2 (E.D. Mich. Jan. 12, 2010) (emphasis added) (quoting 11 U.S.C. § 554(d)); *In re Prospero*, 107 B.R. 732, 734-35 (Bankr. C.D. Cal. 1989).

The phrase "unless the court orders otherwise" appears throughout the Bankruptcy Code. *See, e.g.*, 11 U.S.C. §§ 349(a) and (b), 363(c)(1), 521(a)(1)(B), 1108, and 1326(a)(1). In interpreting those statutes, courts have held that the phrase "unless the court orders otherwise" grants a bankruptcy court discretion. *In re Acosta-Rivera*, 557 F.3d 8 (1st Cir. 2009) ("unless the court orders otherwise" language of § 524(a)(1)(B) gives a bankruptcy court discretion to enter an order excusing nondisclosure of financial information after the time for filing the required information has expired); *In re Amir*, 436 B.R. 1, 22-25 (B.A.P. 6th Cir. 2010) (same); *In re Singer*, 368 B.R. 435, 444 (Bankr. E.D. Pa. 2007) (concluding that the "unless the court orders otherwise" language in § 1326(a)(1) allows a bankruptcy court discretion to excuse adequate protection payments "in appropriate circumstances"); *G & J Invs. v. Zell* (*In re Zell*), 108 B.R. 615, 622 (Bankr. S.D. Ohio 1989) (determining that the "unless the court . . . orders otherwise" language in § 1108 "empowers a debtor-in-possession with far reaching discretion to operate its business [under § 1107], unless the Court orders otherwise").

The body of case law interpreting a court's power to "order otherwise" under § 554 is almost nonexistent. With the exception of the *DeVore* case, the few cases to discuss it do so in the context

of whether a technical abandonment under § 554(c) may be revoked.[5] *Spear v. Schafler* (*In re Schafler*), 263 B.R. 296 (N.D. Cal. 2001); *Neville v. Harris*, 192 B.R. 825 (D.N.J. 1996); *In re Johnson*, 361 B.R. 903 (Bankr. D. Mont. 2007); *In re Gonzales,* 302 B.R. 687 (Bankr. C.D. Cal. 2003). That is a wholly different issue than the one in the case currently on appeal. Here, the bankruptcy court concluded that the Receivable had not been abandoned under § 554(c), but that it could deem the Receivable abandoned to Joy DeGroot pursuant to the "unless the court orders otherwise" language found within § 554(c) and (d). As stated *supra*, the court was not revoking any type of abandonment since the Receivable remained property of the estate when the case was closed pursuant to § 554(d).

In its opinion, the bankruptcy court determined that appropriate circumstances existed in this case which warranted invoking the court's discretion to order otherwise under § 554(c) and (d). Debtor did not list the Receivable on his bankruptcy schedules although he did disclose its existence at his § 341 meeting of creditors and provided an explanation as to why he did not list it on his bankruptcy schedules. The Trustee failed to properly administer the asset in violation of his statutory duties to "collect and reduce to money the property of the estate." *DeGroot*, 460 B.R. at 170 (citing 11 U.S.C. § 704(a)(1)). There was no question that the Trustee had knowledge of the Receivable. He filed the notice of assignment of lien in the Ottawa County Recorder's Office and thereby exerted control over the property and the right to payment of any money that came due under the Receivable. He also filed a notice of dividends to creditors indicating there might be assets available for distribution. It is true that the Receivable was not listed on Debtor's schedules; however, the Trustee's actions in filing the notice of lien and the notice of possible dividends indicates that the Trustee was proceeding as if it were an asset of the estate. Although Debtor's failure to list the Receivable on his schedules may technically mean the property remained property of the estate when the case was closed in May 2008, the Trustee's partial administration of the Receivable, followed

---

[5]In *DeVore*, the 9th Circuit BAP recognized that "the prefatory language of § 554(c) "unless the court orders otherwise," indicates that courts have discretion to affect or prevent technical abandonment simply by ordering otherwise." *Id.* at 198. The *DeVore* panel also recognized that other courts had concluded that technical abandonments could be revoked in "appropriate circumstances." Ultimately, however, the *DeVore* panel concluded that because the order reopening the case and withdrawing the no-asset report did not specifically revoke the technical abandonment, the issue of whether a court can revoke a technical abandonment was not before it.

by his filing a no asset report and certifying that he had performed the duties required under § 704, weigh heavily in allowing the bankruptcy court to now "order otherwise."[6]

Additionally, the bankruptcy court reasoned that the only person who seemed to have suffered as a result of the failure of Debtor and the Trustee to comply with their statutory duties was Joy DeGroot. Therefore, the bankruptcy court concluded that although the Receivable technically remained property of the estate under § 554(d), appropriate circumstances existed to "order otherwise" and deem the Receivable abandoned to Joy DeGroot. The bankruptcy court stated that this discretionary decision was necessary in order to prevent a "miscarriage of justice" and to mitigate unfair consequences of § 554(c) and (d)'s default rules. *DeGroot*, 460 B.R. at 171. The bankruptcy court also stated that

> [t]oday's decision is consistent with the policies behind 11 U.S.C. § 554(c): it does not reward the Debtor for failing to schedule the Receivable (because Ms. DeGroot retains her rights against him and the Receivable for the unpaid child support, including any rights under M.C.L. § 552.625a), and it reinforces the statutory command that trustees must expeditiously administer estate assets by collecting and reducing them to money. Equally important, the decision protects the case-closing procedures designed to bring closure to the numerous constituents affected by a debtor's bankruptcy. More fundamentally, it also preserves the court's integrity.

*Id*. at 172.

A review of the entire record and the governing law makes clear that the bankruptcy court did not err in concluding that it has discretion under § 554(c) and (d) to order abandonment of the Receivable to Joy DeGroot. This review also demonstrates that the bankruptcy court did not abuse such discretion in determining that the Receivable should be deemed abandoned to Joy DeGroot pursuant to 11 U.S.C. § 554(c) and (d).

---

[6]"[I]f the debtor fails to list a claim as an asset, the trustee cannot abandon the claim because he or she will have had no opportunity to determine whether it will benefit the estate." *Darrah v. Franklin Credit* (*In re Darrah*), 337 B.R. 313, 316 (Bankr. N.D. Ohio 2005) (citation omitted) (internal quotation marks omitted). In the case currently on appeal, the Trustee had an opportunity to determine that the Receivable would benefit the estate.

## V.  CONCLUSION

For the reasons set forth herein, the Panel affirms the bankruptcy court's November 23, 2011 opinion and order deeming the unscheduled asset abandoned to Joy DeGroot pursuant to 11 U.S.C. § 554(c) and (d).