*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KIMBERLY KNAPP, formerly known as
KIMBERLY DZIERZAWSKI,

      Plaintiff/Counterdefendant-
      Appellee,

v

VULPINA LLC,

      Defendant/Counterplaintiff-
      Appellant

and

VISIONARY TITLE AGENCY,

      Defendant.

UNPUBLISHED
March 21, 2019

No. 338950
Oakland Circuit Court
LC No. 2016-153159-CH

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

PER CURIAM.

Defendant/counterplaintiff, Vulpina, LLC (Vulpina), appeals the trial court's opinion and order granting summary disposition in favor of plaintiff/counterdefendant, Kimberly Knapp, formerly known as Kimberly Dzierzawski (Knapp), pursuant to MCR 2.116(C)(6), based on res judicata. This claim for declaratory relief has a complex procedural history that involves a separate divorce proceeding and a separate bankruptcy proceeding. Vulpina contends that the trial court erred in granting Knapp's motion for summary disposition based on her offensive use of res judicata, and that the trial court erred in determining that Knapp was entitled to judgment as a matter of law based on the trial court's interpretation of her consent judgment of divorce. We reverse and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2012, Flagstar Bank obtained a money judgment against Knapp's husband, Randy Dzierzawski. Dzierzawski had obtained a business loan for the purpose of supporting his

company, Vinifera Wine Company, LLC (Vinifera). After receiving a money judgment, Flagstar filed a notice of judgment lien against Dzierzawski and Knapp's marital home in Oakland County. Vulpina purchased the judgment from Flagstar. Shortly after, Dzierzawski filed for Chapter 7 bankruptcy in federal court. The bankruptcy court granted Vulpina derivative standing to file an adversary proceeding to challenge Dzierzawski's allegedly fraudulent transfer of Vinifera to Knapp. In November 2014, Vulpina filed its adversary proceeding.

While the bankruptcy case was pending, Dzierzawski and Knapp entered a consent judgment of divorce in September 2015. As part of the divorce, the parties entered a property settlement, which granted the proceeds of the marital home to Knapp. In December 2015, Dzierzawski requested the bankruptcy trustee abandon the marital home under 11 USC § 554. The understanding of all interested parties was that the property was so encumbered that it had no benefit to the bankruptcy estate. In fact, Vulpina stipulated to the abandonment of the property from the bankruptcy estate. In January 2016, the marital home sold, and after satisfying the mortgages and tax liens, there was a surplus of $89,339.65. Defendant, Visionary Title Agency, held the proceeds in escrow in light of Vulpina's judgment lien on the home.

Knapp filed the instant case in May 2016 against Vulpina and Visionary Title Agency. In October 2016, Vulpina settled the federal adversary proceeding against Dzierzawski for $1,210,000, and the bankruptcy court entered an order dismissing the adversary proceeding with prejudice. In June 2017, the bankruptcy court entered an order allowing the trustee to make an interim distribution to Vulpina in the sum of $763,415.67. In August 2017, the bankruptcy court entered an order confirming that the automatic stay had been terminated. Immediately after Vulpina's adversary complaint was dismissed, Knapp moved for a protective order in this case to hold all discovery in abeyance pending a motion for summary disposition, contending that Vulpina had litigated issues related to its money judgment against Dzierzawski and Knapp as part of the bankruptcy proceedings, and thus, Vulpina was barred by res judicata from attempting to enforce the judgment lien against Knapp. Eventually, Knapp filed her motion for summary disposition, and Vulpina filed a cross-motion contending that the bankruptcy proceeding did not absolve Dzierzawski of his debt to Vulpina, that the consent judgment of divorce awarded Knapp Dzierzawski's equitable interest in the marital home, and that the consent judgment held Knapp responsible for any liens attached to that interest.

The trial court issued an opinion and order in favor of Knapp. The court concluded that Vulpina was barred from claiming an interest in the marital home by res judicata, and that the consent judgment of divorce indemnified Knapp from any liens or encumbrances attached to the marital home when it awarded her Dzierzawski's equitable interest. We hold that the trial court erred when it concluded that res judicata prevented Vulpina from claiming an interest in the marital home. However, we remand this case to allow the trial court to determine whether Vulpina has, as a matter of law, any interest in the subject property.

## II. STANDARD OF REVIEW

The trial court found that Vulpina's claim was barred by res judicata and that summary disposition was therefore appropriate pursuant to MCR 2.116(C)(6). MCR 2.116(C)(6) warrants summary disposition where "[a]nother action has been initiated between the same parties involving the same claim." MCR 2.116(C)(6). To the extent that the trial court found summary

disposition pursuant to MCR 2.116(C)(6) to be appropriate based on res judicata, the trial court erred because MCR 2.116(C)(6) is not a codification of the common law doctrine of res judicata. See *Fast Air, Inc v Knight*, 235 Mich App 541, 545-546; 599 NW2d 489 (1999). "MCR 2.116(C)(6) is a codification of the former plea of abatement by prior action." *Fast Air*, 235 Mich at 545 (citation omitted). The purpose of the rule is to preclude repetitive and harassing re-litigation of the same matter already at issue in *pending* litigation. *Id*. at 546. "MCR 2.116(C)(6) does not operate where another suit between the same parties involving the same claims is no longer pending at the time the motion is decided." *Fast Air*, 235 Mich App at 545.

However, "'[a] trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.'" *Southfield Ed Ass'n v Bd of Ed of Southfield Pub Sch*, 320 Mich App 353, 374; 909 NW2d 1 (2017), quoting *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003). Res judicata is a proper basis for granting summary disposition pursuant to MCR 2.116(C)(7). See *Garrett v Washington*, 314 Mich App 436, 440-441; 886 NW2d 762 (2016). See also *Limbach v Oakland Co Bd of Co Rd Comm'rs*, 226 Mich App 389, 395-396; 573 NW2d 336 (1997) (affirming a trial court's grant of summary disposition pursuant to MCR 2.116(C)(7) because a claim was barred by res judicata). We therefore treat this matter as an appeal from a grant of summary disposition pursuant to MCR 2.116(C)(7).

"The trial court's ruling on a motion for summary disposition is reviewed de novo on appeal." *ZCD Transp, Inc v State Farm Mut Auto Ins Co*, 299 Mich App 336, 339; 830 NW2d 428 (2012). "In determining whether summary disposition under MCR 2.116(C)(7) is appropriate, a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Garrett*, 314 Mich App at 441 (quotation marks and citation omitted). "The issue whether the doctrine of res judicata bars a subsequent lawsuit constitutes a question of law that this Court likewise reviews de novo on appeal." *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 686; 762 NW2d 529 (2008).

III. ANALYSIS

Vulpina argues that the trial court erred when it granted summary disposition on res judicata grounds because the property was abandoned from the bankruptcy estate, and therefore, any liens attached to the property were not resolved in the bankruptcy proceedings. We agree.

A. ABANDONMENT UNDER 11 USC § 554

The filing of a petition for relief under the Bankruptcy Code creates a bankruptcy estate consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 USC § 541(a)(1). The abandonment of property from the bankruptcy estate is governed by § 554. Section 554(a) states that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Further, § 554(b) states that "[o]n request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." "Before property may be abandoned under either of these subsections, notice of the intent to abandon must be given to the 'United States trustee, all creditors, indenture trustees, and

-3-

committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code.' " *In re DeGroot*, 484 BR 311, 319 (Bankr CA 6, 2012) (citation omitted). This "assure[s] that the creditors . . . are given an opportunity to object to the return of any property to the bankrupt." *Id.* (quotation marks and citation omitted).

In contrast to the first two sections, Section 554(c) states that "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." "Section 554(c) provides for the second type of abandonment which is often referred to as 'abandonment by operation of law' or 'technical abandonment.' " *In re DeGroot*, 484 BR at 319, quoting *LPP Mortg, Ltd v Brinley*, 547 F 3d 643, 648 n 3 (CA 6, 2008); *In re Reiman*, 431 BR 901, 908 (Bankr ED Mich, 2010). "[P]roperty that was 'transferred to the estate in bankruptcy by operation of law' is returned to the debtor 'nunc pro tunc, so that he is treated as having owned it continuously.' " *In re Reiman*, 431 BR at 908 (citation omitted). In other words, "title to assets abandoned by the trustee as burdensome pass[] to the debtor as if no bankruptcy had been filed." *Id.*, citing *Brown v O'Keefe*, 300 US 598, 602-603; 57 S Ct 543; 81 L Ed 827 (1937). In *Brown*, the United States Supreme Court analogized abandonment out of the estate to rejection of a gift: "[a]cceptance is presumed, but rejection leaves the title by relation as if the gift had not been made." *Brown*, 300 US at 602.

Vulpina argues that when the bankruptcy estate abandoned the property, the judgment lien was not extinguished, and therefore, the lien should be satisfied from the proceeds of the sale of the property. We agree that any liens attached to the property would still exist after abandonment from the bankruptcy court.

The bankruptcy court ordered the trustee to abandon the property. The order to abandon the property, which Vulpina consented to, stated "that the bankruptcy estate's interest in all the Debtor's Personal Residence, as listed on Schedule A, is abandoned under 11 USC § 554 and Debtor may maintain, sell or otherwise dispose of the property *free and clear of the Trustee's and Bankruptcy Estate's interests*." (Emphasis added.) The trustee's abandonment of all interest in the property falls under § 554(b) because Dzierzawski—a party of interest—requested the abandonment, which was granted after notice and a hearing.

The abandonment under § 554(b) was no less comprehensive than when property is abandoned by operation of law under § 554(c) of the Bankruptcy Code. When property is abandoned by operation of law, it is as if the debtor maintained the property without any bankruptcy being filed. We conclude that the language in the bankruptcy court's order operated in the same way as property abandoned by operation of law, and therefore, any liens attached to the property would still be enforceable under state law. The marital property transferred back to Dzierzawski, subject to other encumbrances like mortgages, tax liens, and judgment liens. In fact, the mortgages and tax liens attached to the marital home were recognized as valid and paid when the home was sold. There is no reason that Vulpina's lien should have been stripped from the property while the other encumbrances remained. This appears to have been Vulpina's understanding when it agreed to the abandonment of the property. At the time, the parties did not believe there was any equity left in the home because there were several encumbrances with higher priority, and the trustee abandoned the property for that reason. The bankruptcy court's order was clear that Dzierzawski would retain the property "free and clear of the Trustee's and

Bankruptcy Estate's interests." Moreover, even if Vulpina had objected to abandoning the property, there is no reason to believe the bankruptcy court would have rejected the other party's representation that there was no benefit to retaining the property in the bankruptcy estate, particularly considering Vulpina's understanding that its judgment lien would remain intact if the property was abandoned. As stated in *In re Harber*, 547 BR 252, 258 (Bankr SD Ohio, 2016):

> Since abandonment has no effect upon the validity of the liens encumbering the property, the practical effect of the election is to remove the asset entirely from the jurisdiction of the bankruptcy court. It is simply a declaration by the trustee that the bankrupt estate wants nothing further to do with the property and that the lienors are free to proceed against it just as they normally would under applicable state law.

To conclude that Vulpina no longer has a valid judgment lien on the property is not supported in bankruptcy law, and as elaborated below, the doctrine of res judicata does not bar Vulpina's claim.

## B. RES JUDICATA

"The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action." *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004). To prove that a suit is barred on res judicata grounds, the following is required: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Id*., citing *Sewell v Clean Cut Mgt, Inc*, 463 Mich 569, 575; 621 NW2d 222 (2001). Michigan courts have "taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Adair*, 470 Mich at 121.

Under Knapp's reasoning, Vulpina should have attempted to collect on its judgment lien during the adversary proceeding in the bankruptcy court. As already explained, this was unnecessary because Vulpina's judgment lien was not extinguished when the bankruptcy court abandoned the marital home and, just as other creditors were able to satisfy the mortgages and tax liens upon sale of the property, Vulpina is able to satisfy any judgment lien to the extent allowed under state law. Furthermore, Knapp fails to appreciate the special nature of the adversary proceeding that commenced in the bankruptcy court. As the trial court held, the prior action, i.e., the adversary proceeding, was decided on the merits, and there is no dispute that both actions, i.e., the adversary proceeding and the instant case, involve the same parties or their privies. The only question is whether the instant matter could have been resolved in the adversary proceeding. We conclude that it could not have been decided.

In December 2012, Vulpina filed a complaint with the United States District Court for the Eastern District of Michigan, claiming Dzierzawski fraudulently transferred Vinifera to Knapp in contravention of the Uniform Voidable Transactions Act (UVTA), MCL 566.31 *et seq*. In April 2013, Dzierzawski filed his voluntary petition for Chapter 7 bankruptcy. On September 30, 2013, Vulpina refiled its complaint in the bankruptcy case, again alleging the fraudulent transfer of Vinifera. On August 14, 2014, Vulpina filed a motion for derivative standing to pursue the

fraudulent transfer claims. On September 26, 2014, the bankruptcy court granted Vulpina derivative standing to pursue the fraudulent transfer claims. In November 2014, Vulpina filed another complaint against Dzierzawski and Knapp to recover any money based on the alleged fraudulent transfer of Vinifera. Vulpina was not seeking to collect on its judgment lien through the sale of the marital home during the adversary proceeding. Instead, the limited purpose of Vulpina's participation in the adversary proceeding was to challenge Dzierzawski's fraudulent transfer of Vinifera to shield it from creditors.

"The federal district courts have 'original and exclusive jurisdiction' over all cases under [the Bankruptcy Code], but may refer bankruptcy cases to the bankruptcy courts." *In re Great Lakes Comnet, Inc*, 586 BR 718, 720-721 (Bankr WD Mich, 2018), quoting 28 USC § 157(a); 28 USC § 1334(a). "Upon referral, bankruptcy courts are authorized to hear, determine, and enter appropriate orders and judgments in core proceedings 'arising under' the Bankruptcy Code, or 'arising in' a case under the Bankruptcy Code." *In re Great Lakes*, 586 BR at 721, quoting 28 USC § 157(b)(1). Core proceedings may include "matters concerning the administration of the estate," § 157(b)(2)(A), or "proceedings to determine, avoid, or recover fraudulent conveyances," § 157(b)(2)(H). Bankruptcy courts may also "exercise jurisdiction if the proceeding is 'non-core, but related to' the bankruptcy." *In re Great Lakes*, 586 BR at 721, quoting 28 USC § 157(c)(1).

This Court need not determine whether the adversary proceeding at issue was a core proceeding or non-core proceeding. What matters is that an adversary proceeding, such as the one here, is not a "case" under Title 11 of the United States Code. See *In re Trans-Indus, Inc*, 419 BR 21, 27 (Bankr ED Mich, 2009). Rather, it is a "subaction" of the larger bankruptcy case. See *In re Wolverine Radio Co*, 930 F 2d 1132, 1141 n 14 (CA 6, 1991) (citation omitted). Therefore, only the claims at issue in the adversary proceeding are resolved during that proceeding—not the overall administration of the bankruptcy estate.

Here, the adversary proceeding was initiated for the sole purpose of resolving the fraudulent transfer claims that Vulpina asserted against Dzierzawski. Vulpina did not claim at that time that it was entitled to its share of proceeds from any future sale of the home; that issue was neither raised nor relevant in Vulpina's fraudulent transfer claims. Presumably, there was no reason to make such a claim because administering the estate was the task of the trustee in the bankruptcy case. Indeed, there was no dispute that Vulpina would stand in line behind two mortgages and a tax lien. Based on the value provided in the schedule, all parties believed that Vulpina could not reach any of the equity in the marital home due to the amount owed to the creditors before it. Given the belief of the trustee, Dzierzawski, and the bankruptcy court—in conjunction with the understanding that there was no basis in law to support the notion that abandonment would extinguish the judgment lien—it is simply unreasonable to conclude that Vulpina should have done more during the adversarial proceeding to protect its right to collect in its previously asserted interest in the marital home. Vulpina was granted derivative standing to pursue the fraudulent transfer claims only. Therefore, res judicata does not bar Vulpina's claim to the proceeds of the property to the extent allowed under state law. With that said, Knapp also argues that Vulpina's lien did not survive after the divorce and property settlement between Knapp and Dzierzawski.

## C. PROPERTY SETTLEMENT

Knapp argues that even if Vulpina was not barred from recovering under principles of res judicata, it is not entitled to any of the proceeds from the marital home because Dzierzawski agreed under the property settlement that Knapp would retain all proceeds free and clear of any liens on the property. For the reasons outlined below, remand is required on this issue.

"A settlement agreement, such as a stipulation and property settlement in a divorce, is construed as a contract." *MacInnes v MacInnes*, 260 Mich App 280, 283; 677 NW2d 889 (2004). The interpretation of contract language that is unambiguous and unequivocal is a question of law reviewed de novo. *Id*.

The trial court held that no "factual dispute exists as to whether the consent judgment and settlement agreement bar Vulpina from attaching the proceeds from the sale of the Property." The trial court erred in making this determination. The trial court interpreted the provisions of the consent judgment and property settlement agreement, taken together, to mean that "the Parties expressly excluded each other's liability for the other's **individual** debt and awarded any equity in the home to [Knapp]." Accordingly, the trial court explained that "[t]o allow [Vulpina] to attach the judgment lien as to Mr. Dzierzawski's individual debt against the equity awarded to [Knapp's] judgment of divorce would violate several other provisions of the consent judgment."

We agree that the consent judgment of divorce clearly demonstrates the parties' intent to *generally* indemnify one another from their separate debts, but the judgment also contains the following language: "Neither Party shall be liable for the other Party's obligations to third parties, *except as are otherwise herein provided*." (Emphasis added). Both the consent judgment and the settlement agreement contain sections specifically pertaining to liens. The consent judgment provides that "any lien, encumbrance, or obligation on any property awarded must be assumed and paid by the Party receiving it unless otherwise specified in this judgment." The property settlement agreement provides "if any asset awarded to the Parties herein is encumbered by a lien, the Party to whom the asset is awarded shall be responsible for the payment of the indebtedness behind said lien." Accordingly, any party receiving property in the settlement does so subject to any liens attached to that property. Therefore, to the extent that the trial court determined that Knapp did not have to satisfy liens on the property and was entitled to the full proceeds from the marital home simply because Knapp and Dzierzawski's consent judgment and property settlement agreement indemnified each other from all liens and encumbrances, the trial court erred.

However, there is still a question of whether Vulpina's judgment lien ever attached to the marital home. If it did not, then Knapp would be entitled to the full proceeds of the sale.

"A 'judgment lien' is defined as 'an encumbrance in favor of a judgment creditor *against a judgment debtor's interest in real property*, including, but not limited to, after acquired property.' " *Thomas v Dutkavich*, 290 Mich App 393, 404; 803 NW2d 352 (2010), quoting MCL 600.2801(c). "The judgment lien attaches at the time the notice of judgment lien is recorded or, for after acquired property, at the time the judgment debtor acquires the interest in the property." MCL 600.2803. "A judgment lien does not attach to an interest in real property owned as tenants by the entirety unless the underlying judgment is entered against both the

husband and wife." *Estes v Titus*, 481 Mich 573, 581; 751 NW2d 493 (2008), quoting MCL 600.2807(1) (quotation marks omitted). Thus, real property that is "held jointly by a husband and wife as a tenancy by the entirety is exempt from execution under a judgment entered against only 1 spouse." *Estes*, 481 Mich at 581, quoting MCL 600.6023a.

In this case, there is no dispute that Dzierzawski and Knapp owned the marital home as tenants by the entireties throughout the marriage and that the judgment lien was executed only against Dzierzawski. It is also undisputed that after the trial court entered the consent judgment of divorce, Knapp and Dzierzawski owned the marital property as tenants in common. See MCL 552.102 ("Every husband and wife owning real estate as joint tenants or as tenants by entireties shall, upon being divorced, become tenants in common of such real estate, unless the ownership thereof is otherwise determined by the decree of divorce."). Thus, the question turns on whether the judgment lien attached to Dzierzawski's interest in the property as "after acquired property" under MCL 600.2803 when the parties divorced and their ownership interests changed from tenants by the entireties to tenants in common. The trial court never reached this issue. Therefore, we remand for such a determination.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Amy Ronayne Krause
/s/ Jonathan Tukel