### IN RE: CONCEPTS PLUS, LLC, Debtor.

### Case No. DT 10–01486

United States Bankruptcy Court, W.D. Michigan.

Signed May 3, 2016

---

Wallace H. Tuttle, Wallace H. Tuttle & Associates, P.C., Traverse City, MI, for Debtor.

### MEMORANDUM OF DECISION AND ORDER

PRESENT: HONORABLE SCOTT W. DALES, Chief United States Bankruptcy Judge

Concepts Plus, LLC (the "Debtor") filed a motion to reopen its chapter 7 case at the direction of a state court judge who seeks clarification from this court about the impact of the Debtor's chapter 7 case on a collection proceeding in Illinois. The Debtor asserts this is "cause" to reopen the chapter 7 case.[1] The Motion drew a limited objection from the United States Trustee, and a much hardier objection from Ecologic Industries, LLC ("Ecologic"), Flywheel Group, LLC, and Daniel S. Goldman (with Ecologic and the Flywheel Group, LLC, referred to collectively as the "Ecologic Entities").[2] The Debtor also filed Debtor's Motion Seeking Entry of an Order Regarding the Status of Certain Unadministered Property of the Estate or, in the Alternative, Seeking Abandonment of that Property (the "Abandonment Motion," ECF No. 424). The Ecologic Entities also formally opposed the Abandonment Motion.

The court conducted a telephone hearing to consider the Motion to Reopen on April 28, 2016, at which the Debtor, the United States Trustee, TERN Financial, LLC, and the Ecologic Entities appeared through counsel. Frederick R. Bimber, Esq., who previously served as counsel to both the Official Committee of Unsecured Creditors and the first chapter 7 trustee in this case, also appeared, functionally as *amicus curiae*. The court heard oral argument, and took the matter under advisement.

From the motion papers and statements of all counsel, it appears that the Thirteenth Circuit Court for Grand Traverse County (Michigan) entered judgment in the Debtor's favor and against Ecologic in the amount of $42,230.08 (the "Judgment") in a case captioned as *Concepts Plus, LLC v. Daniel S. Goldman et al.*, Case No. 09–27664, while the Debtor's bankruptcy case was pending. The pendency of the Debtor's case against the Ecologic Entities was well known to the court and the chapter 7 trustee, having been the subject of several motions filed long before entry of the Final Decree on May 1, 2015 (the "Final Decree," ECF No. 422).

On October 23, 2015, the Debtor registered the Judgment in Illinois and pursued collection remedies (including a citation to discover assets with restraining order) against Ecologic in the Nineteenth Judicial Circuit, Lake County (Illinois) under the

---

1.  *See* Concept Plus, LLC's Motion to Reopen Case and for Other Relief (the "Motion to Reopen," ECF No. 423).

2.  *See* Creditors Daniel S. Goldman's, Flywheel Group, LLC's and Ecologic Industries, LLC's Combined Opposition to Debtor's April 10, 2016 Motions (A) To Reopen Case and (B) Seeking Abandonment of the Ecologic Judgment (R. 423, 424) (the "Ecologic Objection," ECF No. 432).

caption *Concepts Plus, LLC v. Ecologic Industries*, Case No. 15–MR–1778, before the Honorable Michael Betar. Ecologic challenged the Debtor's standing to pursue collection, arguing, in part, that the Judgment remained within the Debtor's bankruptcy estate. Commendably, Judge Betar directed the parties to seek guidance from this court, given the sometimes arcane and technical requirements of bankruptcy law. So, at Judge Betar's direction, the Debtor filed the Motion to Reopen and the Abandonment Motion.

Although the court attempted to limit last week's oral argument to the Motion to Reopen, the parties (and the court) inevitably touched on the question of Debtor's post-closing standing to enforce the Judgment, including whether the Judgment was abandoned to the Debtor upon the entry of the Final Decree or whether it somehow remained within the Debtor's bankruptcy estate.

The court has considered whether it should schedule a separate hearing on the Abandonment Motion, but notes that the Ecologic Entities have filed a formal response to that motion as part of their response to the Motion to Reopen, and counsel for the United States Trustee stated on the record that her client takes no position on the merits of the Abandonment Motion. Furthermore, the only other party with an obviously colorable stake in the Judgment—TERN Financial, LLC–does not oppose the Abandonment Motion.

The court has also considered the relatively modest amount represented by the Judgment, the obvious legal expenses associated with additional formal hearings, the absence of any funds in the estate, and the dispositive role that the docket and judicial notice play in resolving the question presented. The procedural posture of the case, *i.e.*, after the entry of the Final Decree following notice and opportunity to object to the former chapter 7 trustee's final report, also favors addressing the Abandonment Motion on the papers, without additional notice or opportunity to be heard. *See* 11 U.S.C. § 102(1) (rule of construction governing phrase "after notice and hearing"); *cf.* Fed. R. Bankr. P. 9007 (recognizing court's authority to determine appropriate notice and hearing). Finally, the court understands that Judge Betar has scheduled a hearing later this month, and with Ecologic's assets subject to a restraining order in Illinois, time is of the essence. Considering the foregoing, the court elects to resolve the Abandonment Motion on the papers submitted.

In summary, the Abandonment Motion is essentially a two-party dispute, and both parties have been fully heard on the question through their papers and on the telephone. Accordingly, the court will address both the Motion to Reopen and the Abandonment Motion in this opinion.

### 1. *Motion to Reopen*

■ After a case is closed, as this one was on May 1, 2015 upon entry of the Final Decree, the court may reopen it "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *see also* Fed. R. Bankr. P. 5010. The Debtor is not seeking to administer assets, but is seeking to comply with Judge Betar's request for guidance from this court. The Debtor is seeking that guidance through its Abandonment Motion. Under the circumstances, the court finds that cause exists to reopen the case to "accord relief to the debtor" in the form of a ruling on the Abandonment Motion.

■ Under the applicable rule, a court ordinarily does not direct the United States Trustee to appoint a trustee in a reopened chapter 7 case, unless the court determines "that a trustee is necessary to

protect the interests of creditors and the debtor or to insure efficient administration of the case." Fed. R. Bankr. P. 5010. The court has determined that a trustee is not necessary for several reasons. First, the Debtor is adequately represented through counsel, as are the creditors who have appeared in response to the Motion to Reopen. In terms of efficiency, the court is mindful of the modest value of the Judgment when compared to the costs of litigating title to it, and collecting it if indeed it remains in the estate. Certainly the estate has no assets to fund the title dispute and collection litigation, and even if the estate were successful in avoiding abandonment, the value of the Judgment to the estate would most likely be reduced further by the claims of supposedly secured creditors or possibly a right of setoff. The court understands the former trustee reached the same conclusion before filing her final report.

The court certainly appreciates the theoretical basis for the United States Trustee's position that the court should appoint a trustee if it intends to resolve the Abandonment Motion, but appointing a trustee under the circumstances of this case would impose an unnecessary burden on the hapless and handcuffed appointee, without any meaningful benefit to the estate. Consequently, the court will not direct the United States Trustee to appoint a trustee, notwithstanding the understandable justification for asking the court to overrule the presumption in Fed. R. Bankr. P. 5010.

■ The last aspect of the Motion to Reopen that the court must address is the Debtor's request to waive the reopening fee. The Debtor argues for waiver "on the basis that the reopening is upon the request of a judicial officer in the further-

ance of judicial clarity and economy." *See* Motion to Reopen at p. 5.

The court typically waives fees only for impecunious debtors, not artificial entities such as the Debtor in this case, and the Debtor has pointed to no specific policy of the Judicial Conference of the United States that warrants waiver. *See* 28 U.S.C. § 1930(f); *see also* Bankruptcy Fee Compendium III (Administrative Office of U.S. Courts, June 1, 2014) at Part J.1.A.[3] Even allowing that the Debtor is acting under the compulsion of Judge Betar's order, it is doing so in pursuit of its own commercial gain. The interest of comity between state and federal courts certainly counsels in favor of resolving the Abandonment Motion, but not subsidizing it by waiving the reopening fee.

The Debtor apparently has the wherewithal to pursue collection of the Judgment, and most likely can afford to pay the reopening fee. Under the circumstances, the court sees no good reason to require the taxpayers to provide even modest support for litigating a two-party dispute that promises no meaningful benefit to creditors. Therefore, the court will not waive the reopening fee.

### 2. *Abandonment Motion*

■ Despite the remarkable efforts of the Ecologic Entities to complicate the issues, the court regards its task as a relatively simple one, controlled by § 554, judicial notice of the court's own records, and a dose of common sense.

The Bankruptcy Code, in relevant part, provides a convenient and straightforward mechanism for closing bankruptcy estates at the end of a case:

---

3. The two main reasons for waiving a reopening fee identified in the Bankruptcy Fee Compendium—to address discharge-related disputes and correct the court's administrative errors—do not apply here.

(c) Unless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

(d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554. Schedule B, which the Debtor filed pursuant to § 521(a)(1), lists "Suit against Daniel S. Goldman and Ecologic Industries, LLC." *See* Schedule B, line 21 (ECF No. 27, at p. 29). The fact that the Debtor scheduled the asset as having a value of "$1" simply indicates uncertainty as to the value of the disputed claim (and presumably the uncertain effect of counterclaims), but does not in the court's view render the lawsuit unscheduled.

The court has considered the authorities the Ecologic Entities cite in their opposition, including *In re DeGroot*, 460 B.R. 159 (Bankr.W.D.Mich.2011), *aff'd*, 484 B.R. 311 (6th Cir. BAP 2012), and finds them unpersuasive. In *DeGroot*, unlike the present case, the Debtor didn't schedule the asset at all. *DeGroot*, 460 B.R. at 170 (debtor "never formally listed [the property] on Schedule B"). The same can be said of the unreported decision in *Bowen v. Peregrin (In re Peregrin)*, 2012 WL 5939266, at * 4 (N.D.Ill. Nov. 28, 2012), upon which they also rely. Similarly, their reliance on *In re Zeckendorf*, 353 F.Supp. 543, 545–46

(S.D.N.Y.1973), is misplaced: that case, decided under the Bankruptcy Act, involved the scheduling of a claim against the estate, not an asset belonging to the estate, and has no bearing on the operation of § 554, the current abandonment mechanism in the Bankruptcy Code.[4]

Nor is the court impressed with the criticisms the Ecologic Entities level against the Debtor's former trustee, including those directed at the detail in her final report or her supposed noncompliance with the United States Trustee's requirements. The court does not review final reports until after the United States Trustee has reviewed and approved them, and from the absence of any objection, the court infers the agency was satisfied with the former trustee's level of detail. Moreover, although the court need not make a finding, any reliance that Ecologic may have placed in that report seems unjustified because nothing in this court's decision to close the Debtor's case affected Ecologic's obligations under the Judgment. The fact that Ecologic "moved on with its business" hardly qualifies as meaningful reliance. If the Ecologic Entities had been concerned about the omission of the Judgment from the trustee's final report, they certainly could have objected. They did not.

The repeated statement that the former chapter 7 trustee did not identify the Judgment as having been abandoned is not in any way inconsistent with the constructive abandonment that occurs at the end of a case by operation of law upon the entry

---

4. The parenthetical annexed to the Ecologic Entities' citation to *Zeckendorf* in their brief (at p. 12) misrepresents the court's decision in that case as involving the scheduling of a debtor's claim against a third party (an asset) when in fact the decision involved the debtor's scheduling of a claim against the debtor (a liability) on the predecessor to Schedule F. Indeed, the *Zeckendorf* court observed that the debtor in that case "lived up to his obligation to file a schedule of the amounts claimed." *Zeckendorf*, 353 F.Supp. at 546. The court's comments about what might have happened if the debtor had not properly scheduled claims, therefore, is *dicta* from outside our circuit.

of a final decree. It is true, of course, that a trustee may abandon an asset under § 554 or dispose of it under §§ 363 or 725 before a case closes, and presumably the final report would list these events. But, trustees routinely and informally identify assets, make determinations as to value or benefit, and without fanfare disregard assets that promise no benefit to the estate, counting on § 554 to flush them out of the bankruptcy estate with a minimum of effort or expense. Because these anticipated abandonments occur upon the case closing, perhaps it makes sense that they are not identified on a document (the final report) that predates the constructive abandonment under § 554 by weeks or months. It would be impractical, if not impossible, for a trustee to list in the final report every stitch of property included within a bankruptcy case, even in the simplest consumer "no asset" case. The case closing process is governed by a rule of reason and depends upon the court's trust in the estate's fiduciary and her certification that nothing of value remains for creditors. The court will not replace the practical way that § 554 operates in thousands of cases in our District with an unworkable and hyper-technical approach advanced as part of a litigation strategy in a single case.

Finally, the Ecologic Entities' reliance on the unspecified "DOJ's instructions" to chapter 7 trustees does not override the operation of § 554. If the Ecologic Entities are referring to some statement contained in the Handbook for Chapter 7 Trustees, that administrative document does not purport to be a "full statement of the law" or a "substitute for legal research." *See* Handbook for Chapter 7 Trustees at p. 1–1 (U.S. Dep't of Justice, 2012). The court's legal research points to §§ 554(c) and 521.

The court-approved asset sale, which might have included the Judgment, did not close, as Mr. Bimber's report and the court's own recollection confirm, so the Judgment remained in the bankruptcy estate at the time the trustee filed her final report, but not after the court entered the Final Decree.

Because the court regards the Judgment has having been abandoned upon the entry of the Final Decree, the Debtor's request to compel abandonment is moot.

CONCLUSION AND ORDER

Certainly the court has no basis to opine about what may have happened to the Judgment after the case was closed, but based on the proceedings and docket in this case it does not hesitate to declare that the Judgment was abandoned to the Debtor on May 1, 2015 by operation of law when the court entered the Final Decree.

The court hopes this conclusion will be of some assistance to Judge Betar and the parties in resolving this dispute which, in the court's view, has dragged on too long and at considerable expense to the commercial, financial, and probably emotional resources of all concerned.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

(1) The Motion to Reopen (ECF No. 423) is GRANTED to the extent it seeks to reopen the case, but DENIED to the extent it seeks waiver of the reopening fee;

(2) The case is reopened and shall remain open for a reasonable time after entry of this Memorandum of Decision and Order to accommodate the filing of any notices of appeal or post-order motions under Fed. R. Civ. P. 9023, but in the absence of any such timely filings the Clerk

shall close the case without further notice or order; and

(3) The Abandonment Motion (ECF No. 424) is GRANTED to the extent it seeks a declaration that the Judgment was "abandoned to the Debtor" under § 554 on May 1, 2015, and DENIED as moot, to the extent it seeks to compel the abandonment at this time.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Wallace H. Tuttle, Esq., Roger L. Wotila, Esq., Scott Andrew Schaefers, Esq., Frederick R. Bimber, Esq., Michael J. Corcoran, Esq., Michelle M. Wilson, Esq., the United States Trustee, and all entities requesting notice of these proceedings.

**IT IS SO ORDERED.**